John T. ADAMS, Plaintiff–Appellant,

v.

MASTER CARVERS OF JAMESTOWN, LTD., Wallie Haines and Thomas M. Terwilliger, Defendants–Appellees.

No. 02–9182.

United States Court of Appeals, Second Circuit.

Feb. 23, 2004.

James R. Grasso, Phillips, Lytle, Hitchcock, Blaine & Huber Buffalo, New York, for Appellant.

Wallie Haines, Jamestown, New York, for Appellees, pro se.

Thomas Terwilliger, Jamestown, New York, for Appellees, pro se.

Present: McLAUGHLIN, KATZMANN, Circuit Judges, and SCHEINDLIN,* District Judge.

## SUMMARY ORDER

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court be and it hereby is **REVERSED.**

Appellant Adams appeals the district court's grant of summary judgment to the defendants, Master Carvers, Wallie Haines, and Thomas M. Terwilliger, in his employment discrimination action.[1] The facts relevant to this appeal are set forth in the district court opinion. *See* 2002 WL 31194562, at *8 (W.D.N.Y., Sept.12, 2002).

This Court reviews the district court's grant of summary judgment *de novo*, construing the evidence in the light most favorable to the non-moving party. *See Tenenbaum v. Williams*, 193 F.3d 581, 593 (2d Cir.1999). Summary judgment is appropriate where "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law," Fed.R.Civ.P. 56(c), i.e., "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). An issue of fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

### Prima Facie Case

We have held that claims under the Americans with Disabilities Act ("ADA") are analyzed under the framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *See Regional Eco-*

---

* The Honorable Shira A. Scheindlin, of the United States District Court for the Southern District of New York, sitting by designation.

1. The defendants have not filed a brief in opposition to Adams's appeal. On May 1, 2003, Terwilliger filed a letter with this Court stating that Master Carvers would not be represented by an attorney and that he and Haines would represent themselves. *See* Letter, May 1, 2003. On June 5, 2003, Terwilliger submitted a letter to this Court stating that he would not file a brief. *See* Letter, June 5, 2003. The corporate officers have effectively chosen not to respond on behalf of Master Carvers. An amicus brief was filed by AARP on behalf of plaintiff's position regarding the ADA on April 2, 2003.

*nomic Cmty. Action Prog., Inc. v. City of Middletown,* 294 F.3d 35, 48–49 (2d Cir. 2002). The *McDonnell Douglas* test has three steps: (1) the plaintiff must establish a *prima facie* case of discrimination; (2) if the plaintiff establishes a *prima facie* case, the burden of production shifts to the defendant to proffer a legitimate, non-discriminatory reason for the employment action; and (3) the plaintiff then bears the ultimate burden of persuasion to prove that the defendants intentionally discriminated against him. *See id.* In order to establish a *prima facie* case of disability discrimination under the ADA, the plaintiff must show that: (1) the defendants are subject to the ADA; (2) he is disabled within the meaning of the ADA; (3) he can perform the essential functions of his job with or without a reasonable accommodation; and (4) he was subject to an adverse employment action because of his disability. *See Reeves v. Johnson Controls World Servs., Inc.,* 140 F.3d 144, 149–50 (2d Cir. 1998). Noting that the defendants conceded that Master Carvers is subject to the ADA, the district court held that Adams did not establish the second and third prongs. The court did not reach the fourth prong of the *prima facie* case.

With respect to his claim under the ADA, Adams asserted that he was "regarded as" disabled by Master Carvers and was therefore disabled within the meaning of the ADA which defines "disability" as,

> "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such impairment; or (C) being regarded as having such an impairment."

42 U.S.C. § 12102(2). This Court has held that "[a]n individual need not actually have a physical impairment to state a claim under the ADA ... as long as that individual is 'regarded as having such an impairment.'" *Francis v. City of Meriden,* 129 F.3d 281, 284 (2d Cir.1997) (internal quotation omitted). To be "regarded as" having a disability, a plaintiff must prove he is regarded as having an impairment that substantially limits one or more major life activities. *See id.* at 285 (noting that a plaintiff must allege that the employer perceived that the employee suffered from an impairment that would be covered under the statute).

On appeal, Adams argues that the district court erred by improperly requiring him to establish that he was *actually* disabled within the meaning of the ADA. However, that is not a proper reading of the district court's opinion. The court correctly noted at the outset of its analysis that the focus of the inquiry as to whether or not Adams was disabled under the statute should be based on the perceptions of the defendants. The court then made clear that to be regarded as having a disability, Adams must have been regarded as having an impairment that substantially limits a major life activity. The court correctly noted that "whether Adams is in fact disabled is irrelevant." Joint Appendix ("JA") at 16. The district court, however, construed Adams's ADA claim too narrowly. The court believed that Adams's argument was that Master Carvers terminated him because of his health-related absences and his need for a short-term medical leave in violation of the ADA. If this were Adams's sole argument, the court's conclusion that he did not establish a disability within the meaning of the ADA would be correct, because his absence did not amount to an impairment that substantially limited his ability to work. *See Toyota Motor Mfg. v. Williams,* 534 U.S. 184, 198, 122 S.Ct. 681, 151 L.Ed.2d 615 (2002) (noting that for an impairment to substantially limit one in a major life activity, the impairment must be permanent or long-

term); *Colwell v. Suffolk Cty. Police Dep't,* 158 F.3d 635, 646 (2d Cir.1998) (holding that a seven-month impairment on one's ability to work is of too short a duration to be considered "substantially limiting"). If the defendants perceived Adams as disabled because he required leave for health-related reasons, they could not have regarded him as being disabled within the meaning of the ADA because his absences did not constitute a substantial impairment. *See Amendola v. Henderson,* 182 F.Supp.2d 263, 274–76 (E.D.N.Y.2001) (holding that plaintiff failed to make a showing that defendant regarded plaintiff as disabled where the evidence only pointed to the conclusion that defendant perceived her as requiring post-operative recovery time).

However, Adams argued that the defendants terminated him because they regarded him as being unable to work at all, not just because he was unable to work during his absences. *See* JA at 36 (alleging in his complaint that "Master Carvers terminated plaintiff in violation of the ADA because it regarded plaintiff as suffering from a disability that substantially limited his ability to work in his position and in a broad class of jobs"). Indeed, Adams submitted evidence in opposition to the defendants' summary judgment motion to support his contention that the defendants were concerned with Adams's ability to work at all times. In his affidavit, Adams stated that when he spoke with Terwilliger prior to returning to work in September, Terwilliger told him that when he returned they would have to "sit down and discuss whether [he] could physically do [his] job." JA at 34. A former employee of Master Carvers, Glen Roberts, stated in his affidavit that he had overheard Terwilliger say that he did not think that Adams was "healthy enough to work." JA at 143. Additionally, David Biancofiore, former vice president of management for Master Carvers, stated in his deposition that Haines viewed Adams as a "health risk." *See* JA at 433. These statements demonstrate that the defendants perceived Adams as being too unhealthy to work in a broad class of jobs, and raise a genuine issue of material fact as to whether the defendants regarded Adams as being disabled within the meaning of the ADA.

The district court also held that Adams did not establish the third prong of a *prima facie* case of disability discrimination—that he is a qualified individual with a disability under the ADA. A plaintiff establishes this prong by showing that he could perform the essential functions of his job with or without a reasonable accommodation. See *Reeves,* 140 F.3d at 149. The district court held that because he required time off from work he was unable to perform an essential function of his job—going to work. However, courts have held that temporary leaves of absence can be considered reasonable accommodations. *See Criado v. IBM Corp.,* 145 F.3d 437, 443 (1st Cir.1998) (holding that a jury could find plaintiff's request for temporary leave to be a reasonable accommodation where plaintiff's physician believed that it would ameliorate her mental impairments); *Powers v. Polygram Holding, Inc.,* 40 F.Supp.2d 195, 199 (S.D.N.Y.1999) (rejecting defendant's argument that a seventeen-week leave of absence is so long as to render plaintiff legally unqualified for his job and holding that a court may conclude, without the need for a trial, that a leave of absence is unreasonable only in unusual circumstances). *See also* 29 C.F.R. Pt. 1630 App. § 1630.15(c) (EEOC guideline stating that under the ADA "an employer ... in appropriate circumstances, may have to consider the provision of leave to an employee with a disability as a reasonable accommodation"). If his health-related absences are deemed reasonable accom-

modations, it cannot be said that Adams could not perform the essential functions of his job with or without a reasonable accommodation.

The defendants contend that Adams was unable to perform any essential human resources duties for Master Carvers from August 11, 1999 until September 27, 1999, the time during which he was at the North Carolina plant and recovering from surgery. *See* Affirmation of Thomas Terwilliger at 11 (Record on Appeal Doc. 30). This statement demonstrates that Adams was able to perform the essential functions of the job on the date that he was terminated, September 28, 1999, the day that he returned to work. The date that an adverse employment decision is made is the relevant date for determining whether an individual is qualified under the statute. *See Frazier v. Simmons,* 254 F.3d 1247, 1256 (10th Cir.2001) (noting that before it determined whether certain functions were "essential" to plaintiff's job, the court needed to "determine what activities [plaintiff] was unable to perform at the time of the employment decision"); *EEOC v. Stowe–Pharr Mills, Inc.,* 216 F.3d 373, 379 (4th Cir.2000) (holding that the EEOC made a sufficient showing that individual was qualified within the meaning of the ADA because one could conclude, based on the evidence, that she could perform the functions of her job on the date that she was placed on involuntary leave); *Bay v. Cassens Transport Co.,* 212 F.3d 969, 974 (7th Cir.2000) (noting that whether an individual is qualified under the ADA is determined "as of the time the employment decision was made"). Furthermore, in its guidelines, the EEOC notes that "[t]he determination of whether an individual with a disability is qualified is to be made at the time of the employment decision." 29 C.F.R. Pt. 1630 App. § 1630.2(m). Based on the evidence in the record and the foregoing law, it was improper for the district court to find, as a matter of law, that Adams was not a qualified individual with a disability.

In support of his argument that the district court improperly concluded that he failed to establish a *prima facie* case, Adams also argues that he has met the fourth prong of a *prima facie* case, the causation prong. Because the district court held that Adams failed to meet the second and third prongs of a *prima facie* case, it did not determine if the fourth prong had been met. A plaintiff can satisfy the fourth prong of a *prima facie* case of employment discrimination by showing that the adverse employment decision occurred under circumstances giving rise to an inference of discrimination. *See Reg'l Econ. Cmty. Action Program v. City of Middletown,* 294 F.3d 35,49 (2d Cir.2002).

Adams argues that the district court improperly failed to infer discrimination based upon the evidence submitted in opposition to the defendants' motion for summary judgment. Adams contends that Terwilliger's references to Adams's illness in the notes Terwilliger made in contemplating the decision to terminate Adams "permit the inference that the defendants perceived plaintiff as disabled from working at all." Appellant's Brief at 17. Adams also states that comments made by Terwilliger and Haines to himself and to other non-party witnesses, further support an inference of discrimination. This Court has repeatedly held that "stray remarks of a decision-maker, without more, cannot prove a claim of employment discrimination." *Abdu–Brisson v. Delta Air Lines, Inc.,* 239 F.3d 456, 468 (2d Cir.2001) (citing *Woroski v. Nashua Corp.,* 31 F.3d 105, 109–110 (2d Cir.1994)). The remarks, however, will no longer be considered "stray" if the plaintiff sets forth "other indicia of discrimination." *See id.* (internal quotations omitted). In order for the re-

marks to be deemed significant, the plaintiff must show their nexus to the adverse employment decision. *See Danzer v. Norden Sys., Inc.*, 151 F.3d 50, 56 (2d Cir. 1998). Here, Adams has put forth evidence that shows that these comments bear a nexus to the decision to terminate him. For instance, Adams stated, in his complaint and his affidavit, that while he was away from work on sick leave, Terwilliger told him that when he returned to work they would have to sit down and talk about whether or not Adams was physically capable of doing his job. *See* JA at 154. Adams also stated that, when Terwilliger terminated him, Terwilliger told him he did not know how Adams could cope with all of his health problems and that Terwilliger could not have handled them. *See id.* Terwilliger's statements, along with the statements of former employees Roberts and Andrew Johnson, show that Haines had expressed a desire to fire Adams because of his illness, and create an inference that the decision to terminate Adams was based upon discriminatory reasons. *See Dazner*, 151 F.3d 50, 56 (2d Cir.1998).

**Pretext**

Adams contends that because he has put forth sufficient evidence that the defendants' stated reasons for terminating him are pretextual, he is entitled to a jury trial. The defendants asserted that they terminated Adams for the following reasons: (1) his performance was unsatisfactory; (2) others were more qualified to perform his duties, specifically accounting duties; (3) Master Carvers needed to cut costs because of declining sales; and (4) Adams reportedly engaged in inappropriate conduct with female employees. *See* Affirmation of Thomas Terwilliger at 15 (Record on Appeal Doc. 30). Under the *McDonnell Douglas* analysis, once a defendant puts forth legitimate, non-discriminatory reasons for its adverse employment deci-

sion, "the plaintiff must point to evidence that would be sufficient to permit a rational factfinder to conclude that the employer's explanation is merely a pretext for impermissible [discrimination]." *Cifra v. Gen. Elec. Co.*, 252 F.3d 205, 216 (2d Cir. 2001).

With respect to Master Carvers's claim that Adams's performance was unsatisfactory, Adams has provided sufficient evidence for a reasonable jury to infer pretext. Although Master Carvers asserted that it was displeased with Adams's performance during his business trip, Adams stated in his affidavit that Terwilliger told him that he thought that Adams "had done the best that could be done in North Carolina under the circumstances." JA at 153. John Sloop, general manager of the Master Carvers plant in North Carolina, testified in his deposition that "Adams did a very nice job of finding people to interview" and that he was satisfied with his performance. JA 458. Moreover, according to Johnson's affidavit, during a discussion regarding Adams's termination Terwilliger told Johnson that there was nothing wrong with Adams's performance. *See* JA at 395. Moreover, Adams received a positive evaluation and was complimented by Haines on his job performance only two months prior to his termination. *See* JA at 33.

Adams has also offered evidence to counter the defendants' assertion that other employees were more qualified to perform the accounting duties of the Human Resources Department. Adams notes that Terwilliger testified that he never informed Adams that the position of Human Resources Coordinator would require accounting skills. *See* JA at 207. Terwilliger also stated that throughout Adams's tenure with Master Carvers, Terwilliger never told Adams that he was expected to

do accounting functions. *See id.* Moreover, in Adams's evaluation, under the heading "Responsibilities," accounting is not listed as a job duty. *See* JA at 166–69. Nor does it note anywhere in the evaluations that Adams's inability to perform accounting functions was problematic. *See id.* It is reasonable to conclude that if accounting abilities were as important to the job of Human Resources Coordinator as the defendants claim, Adams would have been told of the need to have accounting skills before he was hired.

Adams has proffered evidence that the defendants cost-cutting rationale is pretextual. Adams noted that during discovery the defendants claimed that Adams was fired because of financial problems at the Master Carvers North Carolina plant. *See* Affirmation of James R. Grasso at Exhibit L (Record on Appeal Doc. 38); JA at 203. However, Adams has shown that the North Carolina plant is financially independent of the Jamestown plant and that Adams was never an employee of the North Carolina plant. *See* JA at 146; Affirmation of James R. Grasso at Exhibit V (Record on Appeal Doc. 38). The defendants have also asserted that Adams was fired because of a need to cut overhead costs at the Jamestown plant due to a downturn in sales. In opposition to the defendants' motion for summary judgment, Adams submitted the shipping records of Master Carvers of Jamestown for the period of 1998–2000 which show that total shipments in 1999 were at their highest level. *See* Affirmation of James R. Grasso at Exhibit N (Record on Appeal Doc. 38). Furthermore, financial records submitted by Adams show that in 1999, profit levels for Master Carvers of Jamestown were at a three-year high. *See id.* at Exhibits T and U. Finally, in response to the demand to cut overhead costs, Terwilliger hired two new employees, thereby increasing overhead costs by over $40,000. *See* JA at 204–05.

Adams has also submitted evidence to show that the defendants' assertion that Adams engaged in inappropriate conduct with female employees is pretextual. The defendants alleged that female employees Tina Backer and Stephanie Doubek complained of Adams's behavior toward them. *See* Affirmation of Thomas Terwilliger at 7 (Record on Appeal Doc. 30) and Affirmation of Stephanie Doubek (Record on Appeal Doc. 26). With respect to Tina Backer's complaint, Adams notes that Biancofiore testified that he and Terwilliger concluded that Adams had not sexually harassed Backer. *See* JA at 428. Adams also calls attention to the fact that despite an office policy requiring that sexual harassment complaints be investigated, the defendants did not conduct an investigation in accordance with the policy. The evidence does not reveal that he was ever formally disciplined for these incidents. Finally, the defendants submitted a memo whose heading stated, "To John Adams, From Dave B and Tom T." *See id.* However, both Adams and Bicanofiore testified that they had never seen the memo. *See* JA at 118, 155–56, 431–32.

When an employer offers inconsistent explanations for an adverse employment decision "a genuine issue of material fact [is raised] with regard to the veracity of [the] non-discriminatory reason." *Carlton v. Mystic Trans., Inc.,* 202 F.3d 129, 137 (2d Cir.2000). Here, the defendants have offered various explanations for Adams's termination. When he terminated Adams, Terwilliger told him that it was solely for economic reasons. *See* JA at 35. This was also the sole reason given by the defendants in their response to the New York State Division of Human Rights. *See* Affidavit of James R. Grasso at Exhibit D(Record on Appeal Doc.38). Further,

defendants' allegations regarding Adams's poor performance and inappopriate conduct toward female employees is questionable in light of their failure to raise these issues prior to the proceedings in the district court. *See Carlton,* 202 F.3d at 137 (holding that defendant's failure to raise its proffered poor performance explanation in its response to the EEOC raised a genuine issue of material fact).

The evidence offered by Adams to counter the non-discriminatory explanations provided by the defendants and the inconsistencies in the defendants' stated reasons throughout the course of this case raise a genuine issue of material fact as to the credibility of the defendants' assertions. Accordingly, the district court's grant of summary judgment in favor of the defendants was improper.

**New York Human Rights Law Claims**

Adams argues that the district court erred in dismissing his claims under the New York Human Rights Law ("NYHRL"). In his complaint, Adams brought claims against Terwilliger and Haines under the NYHRL alleging perceived and actual disability. The district court dismissed these claims based on the court's conclusion that Adams failed to establish that he was a qualified individual with a disability within the meaning of the ADA.

According to Adams, the court dismissed these claims based on its finding that Adams failed to establish a *prima facie* case. *See* Appellant's Brief. He further states that the court "appears to have dismissed the perceived disability claims under the Human Rights Law on the merits, while not addressing whether Adams's [NYHRL] claim should be dismissed on the basis that he is not disabled." *Id.* The district court stated, "[i]nasmuch as the HRL has a broader definition of 'disability' than does the ADA, this Court does not address whether Adams' HRL claims should be dismissed on the basis that he is not disabled within the meaning of the HRL." ROA Doc. 45 (Memorandum and Order). Contrary to Adams's assertion, it does not appear that the district court dismissed the state law claim based on its finding that Adams failed to prove that he was disabled within the meaning of the ADA. Rather, the court dismissed both the perceived and actual disability claims because it concluded that Adams failed to establish the third prong of a *prima facie* case—that he was a qualified individual with a disability within the meaning of the ADA. More specifically, the court held that its finding that Adams failed to establish that he was able to perform the essential functions of his job with or without a reasonable accommodation precluded Adams's claims under the NYHRL.

The elements of a *prima facie* case and the pretext analysis of ADA claims are also applicable in claims under the NYHRL. *See Reeves,* 140 F.3d at 154–57 (applying the *McDonnell Douglas* analysis applicable to ADA claims to a NYHRL claim). Because Adams has established a *prima facie* case under the ADA, he therefore has established a *prima facie* case of discrimination under the NYHRL. This is especially true given that the NYHRL is generally more favorable to plaintiffs than the ADA. *See id.* (explaining that the NYHRL has a broader definition of disability than the ADA). Accordingly, the district court improperly dismissed Adams's claims under the NYHRL.

For the foregoing reasons, the judgment of the district court is REVERSED and the case is remanded for proceedings consistent with this order.