OPINION OF THE COURT
Michael D. Stallman, J.
In this action, plaintiff Michael Miloscia (Miloscia) sues his former employer to recover damages for alleged disability-based employment discrimination, and for breach of an agreement to provide him with benefits. Defendants and third-party plaintiffs B.R. Guest Holdings LLC and Pamela Friedl (together, BR Guest or defendants) brought a third-party complaint against Metro *469 politan Transportation Authority, City of New York, and New York City Transit Authority (collectively, the Transit Authority or third-party defendants) for contribution and indemnification. The Transit Authority now moves to dismiss the third-party complaint for failure to state a cause of action (motion sequence No. 007), and BR Guest cross-moves for summary judgment on the relief sought in the third-party complaint. By separate motion (sequence No. 008), BR Guest moves for summary judgment dismissing the complaint, and plaintiff cross-moves to strike defendants’ answer, or alternatively, to compel further discovery. The motions are consolidated for purposes of their disposition.
Background
The relevant facts in this case are largely undisputed. Plaintiff Miloscia was hired by BR Guest to work as a manager at Vento restaurant, commencing on April 28 or 29, 2009. (See offer letter, dated Apr. 22, 2009, exhibit J to Badway aff in support of defendants’ motion [Badway aff]; employee lifecycle administration request, exhibit E to Badway aff.) Defendant Pamela Friedl (Friedl), then BR Guest’s corporate recruiter, recruited plaintiff, and, according to plaintiff, offered him the job. (Friedl deposition, exhibit 2 to Scher aff in support of plaintiffs cross motion [Scher aff], at 47; Miloscia deposition, exhibit 3 to Scher aff, at 65.)[1] Plaintiff then signed a letter agreement, offering him the manager position, which provided, among other things, that he became eligible for health insurance benefits “effective the first of the month following three months of employment,” that is, on or about August 1, 2009. (See offer letter, exhibit J to Bad-way aff.) There is no dispute that, up until the date that he was injured, plaintiff performed his job satisfactorily.
Early in the morning of July 16, 2009, after socializing at a bar with a coworker, J.C. Shurts (Shurts), plaintiff was hit by a bus, owned and/or operated by third-party defendants. He sustained severe injuries, which required emergency treatment and hospitalization. On the date of the accident, plaintiff’s mother, Margaret Miloscia, notified defendants that plaintiff was unable to report to work because of his injuries. (See aff of Margaret Miloscia, exhibit V to Badway aff, U 4.) The same day, Shurts also notified Wendy Schlazer, BR Guest’s vice-president of operations, that plaintiff had been in an accident and would not be at work. (Shurts aff, exhibit L to Badway aff; Schlazer deposition, exhibit O to Badway aff, at 50.) Over the days and *470 weeks following plaintiffs accident, plaintiffs mother had several conversations with employees of BR Guest, and, while the details of what was said during those conversations are disputed, it is not disputed that plaintiff s mother informed the employees that plaintiff did not expect to be able to return to work for approximately three to six months. (See Margaret Miloscia aff 1i 5; Friedl deposition, exhibit N to Badway aff, at 62; Schlazer deposition, exhibit O to Badway aff, at 60-61.) Plaintiff also informed Shurts, in e-mail exchanges, that he needed three to six months to recover. (Miloscia deposition, exhibit 3 to Scher aff, at 77, 81; see e-mails, exhibit Q to Badway aff.)
During July and early August 2009, Margaret Miloscia had several conversations with Rich Mangual (Mangual), then BR Guest’s director of human resources information systems and benefits, about medical benefits for her son. (See Mangual deposition, exhibit 6 to Scher aff, at 24, 105-106; Margaret Miloscia aff If 11 5, 9.) Specifically, on August 4, 2009, plaintiffs mother spoke with Mangual about obtaining health care benefits, and was advised that there were various packages available to plaintiff. (Margaret Miloscia aff If 10; Mangual deposition, exhibit 6 to Scher aff, at 89, 109; Friedl deposition, exhibit 2 to Scher aff, at 84-85.) The same day, after learning that Mangual had been speaking with Margaret Miloscia about health insurance packages, Friedl called plaintiffs mother and informed her that “we had to let Michael go because he cannot work” and “he abandoned his position.” (Friedl deposition, exhibit 2 to Scher aff, at 86; Margaret Miloscia aff If 11.) Friedl testified that she then informed plaintiff’s mother that “he is eligible for rehire. He can come back whenever he wants and we will find a place for him.” (Friedl deposition, exhibit 2 to Scher aff, at 86.) By letter dated August 5, 2009, Friedl reiterated that plaintiffs employment with BR Guest was terminated effective July 16, 2009. (See Aug. 5, 2009 letter, exhibit T to Bad way aff.) Subsequently, in November 2009, Friedl sent a letter to Miloscia, inquiring about his recovery, and informing him that defendants were willing to work with him to find him a position in one of BR Guest’s New York City properties. (See letter, dated Nov. 2, 2009, exhibit X to Badway aff.)
Plaintiffs mother attests that, prior to August 4, 2009, defendants did not notify her that plaintiff’s employment was terminated. (Margaret Miloscia aff, exhibit V to Badway aff If 12.) Miloscia testified that it was his understanding that he was terminated on August 4, 2009, “and then at some point *471 along the way, it got backdated to another date.” (Miloscia deposition, exhibit 3 to Scher aff, at 202.) Defendants dispute these claims. Schlazer testified that, a few days after plaintiffs accident, she reached out to plaintiffs mother to express her concern and to find out what was going on, and when she found out that plaintiff would be in the hospital for a couple months, she told plaintiffs mother that she would need to “separate employment, because [she] would need to replace him for coverage in the restaurant.” (Schlazer deposition, exhibit 5 to Scher aff, at 60-61.) Friedl also testified that, although she was not on the call with Schlazer and Margaret Miloscia, it was her “impression” that plaintiff was terminated during the call, which occurred on or about July 21, 2009. (Friedl deposition, exhibit 2 to Scher aff, at 69, 66.) Friedl further testified that she prepared contemporaneous notes summarizing Schlazer’s telephone conversation with Margaret Miloscia, which indicate that plaintiff’s mother was told that they needed “to take [plaintiff] off the schedule and hire another manager for now.” (Id. at 67-68; see notes, dated Tuesday, July 21, 2009, annexed to Friedl deposition as Friedl’s exhibit 5.) Friedl testified that, after Schlazer’s telephone call, she had discussions with other human resources employees, including Mangual, about possible leave options for plaintiff, but they decided that plaintiff did not qualify for any leave under BR Guest’s policies, because he had not been employed for three months. (Friedl deposition, exhibit 2 to Scher aff, at 69-70, 76-77.) According to Friedl, after these discussions, she, Mangual, and other employees came to the conclusion that plaintiff had to be separated. (Id. at 81.) Friedl could not say that the decision was made by one person, and testified that it was not as much a decision “as it was just a conclusion.” (Id. at 72-73.)
Plaintiff commenced the instant action in December 2009. The complaint alleges that defendants discriminated against him based on disability, in violation of the New York City Human Rights Law (NYCHRL) (Administrative Code of City of NY § 8-101 et seq.) and the New York State Human Rights Law (NYSHRL) (Executive Law § 290 et seq.), by failing to provide a reasonable accommodation or to engage in an interactive process to determine whether plaintiff could be provided with a reasonable accommodation. Plaintiff also alleges that defendants breached a contract, or an implied contract, by failing to provide plaintiff with medical benefits after three months of employment, as set forth in defendants’ letter offering employment to plaintiff.
*472 Defendants contend that they are entitled to summary judgment dismissing the complaint, on the grounds that plaintiff was unable to perform the essential functions of his job, with or without an accommodation, that he failed to request an accommodation, and that defendants offered him a reasonable accommodation which he refused. Defendants move to dismiss the breach of contract/breach of implied contract claim on the grounds that plaintiff was an at-will employee, with no contractual rights, and he did not meet the requirements for obtaining benefits. Defendants also assert that defendant Friedl cannot be held individually liable because she did not make the decision to terminate plaintiffs employment, and made no decisions regarding his eligibility for benefits.
Defendants’ Motion for Summary Judgment (Sequence No. 008)
It is well settled that to prevail on a motion for summary judgment, the movant must establish its entitlement to judgment as a matter of law, by submitting evidentiary proof in admissible form sufficient to demonstrate the absence of any material issues of fact. (See CPLR 3212 [b]; Alvarez v Prospect Hosp., 68 NY2d 320, 324 [1986]; Zuckerman v City of New York, 49 NY2d 557, 562 [1980].) “Failure to make such showing requires denial of the motion, regardless of the sufficiency of the opposing papers.” (Winegrad v New York Univ. Med. Ctr., 64 NY2d 851, 853 [1985].) Once such proof has been offered, to defeat summary judgment “the opposing party must ‘show facts sufficient to require a trial of any issue of fact’ (CPLR 3212, subd [b]).” (Zuckerman, 49 NY2d at 562.) In reviewing a motion for summary judgment, the evidence must be viewed in a light most favorable to the nonmoving party (see Branham v Loews Orpheum Cinemas, Inc., 8 NY3d 931, 932 [2007]), and the motion must be denied if there is any doubt as to the existence of a triable issue of fact. (See Sillman v Twentieth Century-Fox Film Corp., 3 NY2d 395, 404 [1957].) Courts further urge caution in granting summary judgment in employment discrimination cases, as direct evidence of intentional discrimination is rarely available. (See Ferrante v American Lung Assn., 90 NY2d 623, 631 [1997]; Gorzynski v JetBlue Airways Corp., 596 F3d 93, 101 [2d Cir 2010]; Spencer v International Shoppes, Inc., 2010 WL 1270173, *5, 2010 US Dist LEXIS 30912, *15-16 [ED NY 2010].)
Under both the NYSHRL and the NYCHRL, it is an unlawful discriminatory practice for an employer, because of an individual’s disability, to refuse to hire or to discharge such individual, *473 or otherwise to discriminate against such individual in the terms, conditions and privileges of employment. (Executive Law § 296 [1] [a]; Administrative Code § 8-107 [1] [a].) To establish a case of disability discrimination, a plaintiff must show that he or she suffers from a disability, and the disability caused the behavior for which he or she was terminated. (Matter of Mc-Eniry v Landi, 84 NY2d 554, 558 [1994]; see Vig v New York Hairspray Co., L.P., 67 AD3d 140, 146 [1st Dept 2009].) The term “disability” is defined, under the NYSHRL, as
“a physical, mental or medical impairment . . . which prevents the exercise of a normal bodily function or is demonstrable by medically accepted clinical or laboratory diagnostic techniques . . . [and] which, upon the provision of reasonable accommodations, do[es] not prevent the complainant from performing in a reasonable manner the activities involved in the job or occupation sought or held.” (Executive Law § 292 [21]; see Phillips v City of New York, 66 AD3d 170, 178 [1st Dept 2009]; Pimentel v Citibank, N.A., 29 AD3d 141, 145 [1st Dept 2006].)
The NYCHRL defines “disability” as “any physical, medical, mental or psychological impairment, or a history or record of such impairment.” (Administrative Code § 8-102 [16] [a]; see Phillips, 66 AD3d at 181.)
Failure to provide a reasonable accommodation to an employee’s known disability is a form of discrimination under both the NYSHRL and the NYCHRL. (See Executive Law § 296 [3] [a]; Administrative Code § 8-107 [15] [a]; see generally Vinokur v Sovereign Bank, 701 F Supp 2d 276 [ED NY 2010]; Phillips v City of New York, 66 AD3d 170 [2009], supra.) “Reasonable accommodation,” as defined by the NYSHRL, means actions which permit a disabled employee “to perform in a reasonable manner the activities involved in the job . . . and include, but are not limited to . . . job restructuring and modified work schedules; provided, however, that such actions do not impose an undue hardship on the business.” (Executive Law § 292 [21-e].) The NYCHRL defines “reasonable accommodation” as “such accommodation that can be made that shall not cause undue hardship in the conduct of the covered entity’s business. The covered entity shall have the burden of proving undue hardship.” (Administrative Code § 8-102 [18].) This has been found to mean that “there is no accommodation . . . that is categorically excluded from the universe of reasonable accommodation.” (Phillips, 66 AD3d at 182.)
*474 The NYSHRL and NYCHRL, as well as their federal counterpart, the Americans with Disabilities Act (ADA) (42 USC § 12101 et seg.), “envisage employer and employee engaged in an interactive process in arriving at a reasonable accommodation for a disabled employee.” {Pimentel, 29 AD3d at 149; see Phillips, 66 AD3d at 175; Lovejoy-Wilson v NOCO Motor Fuel, Inc., 263 F3d 208, 218-219 [2d Cir 2001].)[2] Under either state or local law, therefore, “the first step in providing a reasonable accommodation is to engage in a good faith interactive process that assesses the needs of the disabled individual and the reasonableness of the accommodation requested.” {Phillips, 66 AD3d at 176.) Engagement in an individualized interactive process is itself an accommodation, and, generally, the failure to so engage is a violation of the state and city statutes. {Id., see Jochelman v New York State Banking Dept., 2010 WL 3951820, 2010 NY Misc LEXIS 4823 [Sup Ct, NY County 2010], affd 83 AD3d 540 [1st Dept 2011]; Vinokur, 701 F Supp 2d at 292; but see Hayes v Estee Lauder Cos., Inc., 34 AD3d 735, 737 [2d Dept 2006] [court, upholding jury finding that employer had endeavored to provide plaintiff with reasonable accommodation, noted that “there is no controlling . . . authority holding that an employer may be held liable based solely on its failure to engage in an interactive process with an employee, absent a showing that the breakdown of the interactive process led to the employer’s failure to provide a reasonable accommodation”].)
A prima facie case of failure to accommodate requires a showing that (1) plaintiff was disabled within the meaning of the statutes; (2) the employer had notice of the disability; (3) plaintiff could perform the essential functions of his or her job, with a reasonable accommodation; and (4) the employer refused to make a reasonable accommodation. {See Vinokur, 701 F Supp 2d at 293; Roberts v AIG Global Inv. Corp., 2008 WL 4444004, *5, 2008 US Dist LEXIS 76891, *22 [SD NY 2008]; Pimentel, 29 AD3d at 145-146.)
Defendants do not contest that plaintiff was disabled as a result of his accident, or that they had notice of his disability, and defendants do not deny that he was terminated when he was unable to report to work, on July 16, 2009, due to his dis-
*475 ability. Defendants contend, however, that plaintiff was not eligible for an accommodation, and no accommodation was possible, because he was completely unable to work following Ms accident. Defendants argue, in essence, that “because he required time off from work he was unable to perform an essential function of Ms job — going to work.” {Adams v Master Carvers of Jamestown, Ltd., 91 Fed Appx 718, 721 [2d Cir 2004]; see mem of law in support of defendants’ motion at 18.) Courts have held, however, that temporary leaves of absence, even extended leaves, can be reasonable accommodations. {See Graves v Finch Pruyn & Co., Inc., 457 F3d 181, 185 [2d Cir 2006]; Adams, 91 Fed Appx at 721; Casseus v Verizon N.Y., Inc., 722 F Supp 2d 326, 351 [ED NY 2010]; see generally Phillips v City of New York, 66 AD3d 170 [2009], supra, cf. Dansler-Hill v Rochester Inst. of Tech., 764 F Supp 2d 577, 583 [WD NY 2011]; Starr v Time Warner, Inc., 2007 WL 4144627, *4, 2007 US Dist LEXIS 88219, *11 [SD NY 2007].) As has been explained,
“a requested leave of absence is an unreasonable request for accommodation, only in unusual circumstances, . . . [for example] where the request is for a very long leave of absence, such as one year (although we do not here hold that any exact number is the ‘red line’ that demarcates the reasonable from the unreasonable); . . . [or] where it is clear that, even when the employee returns from the requested leave of absence, he or she will still be unqualified to perform the essential functions of their job.” {Powers v Polygram Holding, Inc., 40 F Supp 2d 195, 201 [SD NY 1999]; see Adams, 91 Fed Appx at 721; Sclafani v PC Richard & Son, 668 F Supp 2d 423, 445 [ED NY 2009].)
Thus, while an employer may not be required to. hold a disabled employee’s position open indefinitely {see Esposito v Altria Group, Inc., 67 AD3d 499, 500 [1st Dept 2009]; Stamey v NYP Holdings, Inc., 358 F Supp 2d 317, 326-327 [SD NY 2005]), the employer must consider the feasability of all possible accommodations, including the availability of an extended leave of absence. {See Phillips, 66 AD3d at 179-180.) Moreover, as regulations implementing the NYSHRL provide, “[a] current employee experiencing a temporary disability is protected by the Human Rights Law where the individual will be able to satisfactorily perform the duties of the job after a reasonable accommodation in the form of a reasonable time for recovery.” (9 NYCRR 466.11 [i] [1].)
*476 In this case, defendants have not demonstrated that, as a matter of law, granting a leave would be an unreasonable accommodation. Defendants make no evidentiary showing, and do not argue, that providing a leave of absence would create an undue hardship. There also is no evidence that plaintiff was seeking an indefinite leave, or that he would be unable to perform the functions of his job if granted time to recover. Plaintiff testified, without contradiction, that he was able to return to work, and began to look for work, approximately six to seven months after he was injured. (Miloscia deposition at 219.)
Defendants’ determination that no leave was available to plaintiff because BR Guest’s leave policy applied only to employees who had been working for three months or longer at best raises issues of fact as to whether an extended leave was reasonable. “Defendants cannot avoid engaging in the interactive process contemplated by both statutes by citing their policy that employees . . . such as plaintiff, are not allowed medical leave . . . .” {Phillips, 66 AD3d at 177 [also noting, at 179 n 7, that the Equal Employment Opportunity Commission guidelines regarding reasonable accommodations provide that “[mjodifying workplace policies, including leave policies, is a form of reasonable accommodation”].) BR Guest’s own family and medical leave policy, based on the Federal Family and Medical Leave Act (FMLA), expressly recognizes that the FMLA “does not affect any federal or state law prohibiting discrimination and does not supercede any state or local law which provides greater family and medical leave rights. Therefore, the Company will comply with whichever law provides the greater rights to employees.” (BR Guest’s Employee Handbook, exhibit Y to Badway aff, at 36.)
Defendants also fail to establish that they made “a clear, fact-specific inquiry” or “engage[d] in a good faith interactive process . . . [to] clarify the individual needs of the employee and the business, and identify the appropriate reasonable accommodation.” {Phillips, 66 AD3d at 175; see Hayes, 34 AD3d at 737.) Although defendants claim that plaintiff did not request an accommodation, it is not disputed that they were aware of his disability and were informed that he needed three to six months to be able to return to work.
While there is some authority that, under the NYSHRL, an employer has a responsibility to investigate the feasability of an accommodation only after an employee makes a specific request *477 (see Pimentel, 29 AD3d at 148), more commonly courts have held that an employer has an independent duty to reasonably accommodate an employee’s disability if the employer knew or reasonably should have known that the employee was disabled, whether or not a specific request has been made. (See Phillips, 66 AD3d at 189; Brady v Wal-Mart Stores, Inc., 531 F3d 127, 135 [2d Cir 2008] [analyzing ADA requirement to engage in interactive process]; Roberts, 2008 WL 4444004 at *6-7, 2008 US Dist LEXIS 76891 at *23-26 [same analysis applied to NYCHRL claims].) “This view is consistent with the statutory and regulatory language, which speaks of accommodating ‘known’ disabilities, not just disabilities for which accommodation has been requested.” (Brady, 531 F3d at 135.)
For example, the NYSHRL regulations provide that “[r]easonable accommodation must be considered where the disability and need for accommodation are known to the employer,” as well as when an employee requests an accommodation. (See 9 NYCRR 466.11 [e] [1], [2].) These regulations further provide that “[t]he employer has a duty to move forward to consider accommodation once the need for accommodation is known or requested. The employer has the duty to clearly request from the . . . employee any documentation that is needed.” (9 NYCRR 466.11 [j] [4].) The NYCHRL also affirmatively requires that, even in the absence of a specific request, an employer “shall make reasonable accommodation to enable a person with a disability to satisfy the essential requisites of a job . . . provided that the disability is known or should have been known by the [employer].” (Administrative Code § 8-107 [15] [a]; see Phillips, 66 AD3d at 189; Nande v JP Morgan Chase & Co., 17 Misc 3d 1103[A], 2007 NY Slip Op 51819[U], *4 [Sup Ct, NY County 2007] [contrasting duties under NYSHRL and NYCHRL], affd on other grounds 57 AD3d 318 [1st Dept 2008].)
Defendants do not claim that they were unaware that plaintiff was disabled, and assert that, despite believing that they had no obligation to accommodate him, they considered options for plaintiff, but decided that nothing could be done. (See Friedl deposition, exhibit 2 to Scher aff, at 69-70, 74-76.) Discussions about such options were, however, conducted only infernally, with BR Guest employees, “based upon Plaintiff and his mother’s representations concerning his injuries.” (Id. at 69-72.) Defendants asked for no documentation from plaintiff, and they decided that plaintiff was not eligible for leave based solely on the company’s leave policy. Moreover, Friedl and Schlazer *478 testified that they were unaware that they had an obligation to engage in an interactive process. (Id. at 75; Schlazer deposition, exhibit 5 to Scher aff, at 63-64.)
Finally, to the extent that defendants argue that they offered plaintiff a reasonable accommodation when, after terminating his employment, they advised him that he could reapply for a position when he was able to return to work (see mem of law in support of defendants5 motion at 2), that argument, which misconstrues the purpose of the human rights laws, is completely lacking in merit. “Implicit in the statute» is the requirement that the accommodation enable the employee to continue to enjoy or perform the terms, conditions or privileges of employment.’’ (Ruhling v Tribune Co., 2007 WL 28283, *15 n 4, 2007 US Dist LEXIS 116, *46 n 4 [ED NY 2007].) Termination of employment, by definition, does not enable an employee to continue to enjoy the terms, conditions and privileges of employment. As the statutory protections against discrimination in the terms, conditions and privileges of employment extend only to employees, absent an employer-employee relationship, a disabled individual has no further right to seek an accommodation. (See Scott v Massachusetts Mut. Life Ins. Co., 86 NY2d 429, 433 [1995]; Scott v Memorial Sloan-Kettering Cancer Ctr., 190 F Supp 2d 590, 596 [SD NY 2002].) Therefore, however well-intentioned defendants were in advising plaintiff that he could seek reemployment in the future, they did not, in so advising plaintiff, provide a reasonable accommodation.
The court accordingly finds that there are triable issues of fact as to whether an interactive process occurred, whether a leave of six or more months was a reasonable accommodation, and whether plaintiff was capable of performing the essential functions of Ms position with such accommodation.
As to the claims against defendant Friedl, under the NYSHEL, an individual employee may be liable as an “employer,” only when she has an “ownership interest or any power to do more than carry out personnel decisions made by others.” (Patrowich v Chemical Bank, 63 NY2d 541, 542 [1984]; see Kaiser v Raoul's Rest. Corp., 72 AD3d 539 [1st Dept 2010]; Pepler v Coyne, 33 AD3d 434 [1st Dept 2006].) The NYCHRL, which expressly extends liability to “an employee,” similarly has been interpreted to “include[ ] fellow employees under the tent of liability . . . only where they act with or on behalf of the employer in hiring, firing, paying, or in administering the Terms, conditions or privileges of employment.’ ” (Priore v New *479 York Yankees, 307 AD2d 67, 74 [1st Dept 2003]; see Ballard v Children’s Aid Socy., 2011 WL 1664980, *10, 2011 US Dist LEXIS 48203, *29 [SD NY 2011]; Mitra v State Bank of India, 2005 WL 2143144, *3, 2005 US Dist LEXIS 19138, *11-12 [SD NY 2005]; but see Nicholson v Staffing Auth., 2011 WL 344101, *4, 2011 US Dist LEXIS 11616, *17 [SD NY 2011] [the 2005 amendment of the NYCHRL makes it “unclear whether employees can now be held liable as primary violators, regardless of their ownership interest in the employer or the scope of their ability to make personnel decisions”].)
Alternatively, under both the NYSHRL and NYCHRL, an individual employee may be held liable for aiding and abetting discriminatory conduct (Executive Law § 296 [6]; Administrative Code § 8-107 [6]; see Mitchell v TAM Equities, Inc., 27 AD3d 703, 707 [2d Dept 2006]; D’Amico v Commodities Exch., 235 AD2d 313, 315 [1st Dept 1997]; Peck v Sony Music Corp., 221 AD2d 157, 158 [1st Dept 1995]). In general, an individual defendant who actually participates in the conduct of an employer giving rise to the discrimination claim may be an aider and abettor, even when the individual lacks the authority to hire or fire the plaintiff. (See Feingold v New York, 366 F3d 138, 158 [2d Cir 2004].) An aiding and abetting claim against an individual employee depends on employer liability, however, and, “[w]here no violation of the Human Rights Law by another party has been established, . . . individuals cannot be held liable ... for aiding and abetting their own violations of the Human Rights Law.” (Strauss v New York State Dept. of Educ., 26 AD3d 67, 73 [3d Dept 2005]; see Matter of Medical Express Ambulance Corp. v Kirkland, 79 AD3d 886, 888 [2d Dept 2010]; Nicholson, 2011 WL 344101 at *3, 2011 US Dist LEXIS 11616 at *12; JG & PG ex rel. JGIII v Card, 2009 WL 2986640, *12, 2009 US Dist LEXIS 85372, *34 [SD NY 2009].)
Here, triable issues of fact remain about whether, and to what extent, Friedl was involved in the decisions to hire, fire, and/or deny an accommodation to plaintiff. (See Sanchez v Brown, Harris, Stevens, 234 AD2d 170 [1st Dept 1996].) Although defendants argue that Friedl did not make the decision to terminate plaintiffs employment, Friedl testified that she, together with other employees in BR Guest’s human resources department, came to the conclusion that plaintiff had to be “separated,” and she could not identify any other individual who made that decision. (Friedl deposition, exhibit 2 to Scher aff, at 72-73, 75, 81.) Miloscia testified that he interviewed with *480 Friedl to get the job at Vento, she offered him the position, and he thus believed that she hired him. (Miloscia deposition, exhibit 3 to Scher aff, at 65.)
Breach of Contract
Turning to plaintiff’s claim that defendants breached an agreement to provide medical benefits after three months of employment, in view of the above findings, issues of fact remain as to whether plaintiff was entitled to medical benefits pursuant to BR Guest’s policies and the terms of the parties’ letter agreement. According to Friedl, BR Guest employees fall into one of three categories of employment status: active, on leave, and terminated. (Friedl deposition, exhibit 2 to Scher aff, at 72.) Defendants contend that only “active” employees Eire entitled to benefits, and therefore, even if plaintiff had been granted leave, he would not have been eligible for benefits. (See mem of law in support of defendants’ motion at 30; Friedl deposition, exhibit 2 to Scher aff, at 109.) Defendants, however, offer no evidence that employees on leave were not entitled to benefits, or that other employees on leave never received benefits. Defendants therefore have not demonstrated that the breach of contract claim must be dismissed.
Plaintiffs Cross Motion to Strike or Compel
Plaintiffs cross motion seeking sanctions against defendants for failure to complete depositions is denied. Pursuant to CPLR 3214 (b), a summary judgment motion “stays disclosure until determination of the motion unless the court orders otherwise.” The court has not lifted the stay, and, as the filing of defendants’ motion prior to completion of discovery was permissible, sanctions are not warranted. In view of the denial of defendants’ summary judgment motion, however, the branch of plaintiffs motion to compel is granted to the extent that the parties are directed to expeditiously complete previously ordered discovery, including outstanding depositions. The parties also may request a compliance conference in the part to which this case is reassigned, to address any outstanding discovery issues. Third-Party Defendants’ Motion to Dismiss (Sequence No. 007)
BR Guest’s third-party complEiint against the Transit Authority alleges that plaintiff sustained substantial injuries as a result of being struck by a bus negligently operated by third-pEirty defendants, and that defendants/third-party plaintiffs “have paid, or may continue to pay, substantial sums of money to plaintiff’ for those injuries. BR Guest claims that it therefore is entitled to contribution and indemnification from the Transit Authority *481 for any monies paid, or to be paid, to plaintiff for his injuries. (See verified answer and third-party complaint, exhibit B to Coffey aff in support of third-party defendants’ motion to dismiss, 1ÍH 10, 14, 22-24, 27-29.) The Transit Authority moves to dismiss the third-party complaint on the grounds that, as a matter of law, it violated no duty to plaintiff under the NYSHRL and NYCHRL, and that it has no connection to BR Guest that, under any legal theory, could require contribution or indemnification for any of BR Guest’s alleged wrongs against plaintiff. (See Coffey aff in support of third-party defendants’ motion to dismiss If 12.) In opposition, and in support of its cross motion for summary judgment, BR Guest contends that it is entitled to contribution and common-law indemnification because the Transit Authority’s negligence caused plaintiff s injuries, and but for those injuries, plaintiff would have no discrimination claim against BR Guest. (See BR Guest’s mem of law in opposition at 1.)
“The purpose of all contribution and indemnity rules is the equitable distribution of the loss occasioned by multiple defendants.” (Mas v Two Bridges Assoc., 75 NY2d 680, 690 [1990].) There are, as courts often note, “important substantive distinctions between contribution and indemnity. Basically, in contribution the loss is distributed among tort-feasors, by requiring joint tort-feasors to pay a proportionate share of the loss . . . , while in indemnity the party held legally liable shifts the entire loss to another.” (Rosado v Proctor & Schwartz, 66 NY2d 21, 23-24 [1985]; see Raquet v Braun, 90 NY2d 177, 182-183 [1997]; Mas, 75 NY2d at 689-690; McDermott v City of New York, 50 NY2d 211, 216 [1980]; McFall v Compagnie Mar. Belge [Lloyd Royal] S. A, 304 NY 314, 327-328 [1952].)
“In the ‘classic indemnification case,’ the one seeking indemnity ‘had committed no wrong, but by virtue of some relationship with the tort-feasor or obligation imposed by law, was nevertheless held liable to the injured party.’ ” (Glaser v Fortunoff of Westbury Corp., 71 NY2d 643, 646 [1988], quoting D'Ambrosio v City of New York, 55 NY2d 454, 461 [1982].) Common-law indemnity thus permits one who “is held liable solely on account of the negligence of another ... to shift the entire liability to the one who was negligent.” (D'Ambrosio, 55 NY2d at 462; see Glaser, 71 NY2d at 646; Guzman v Haven Plaza Hous. Dev. Fund Co., 69 NY2d 559, 567-568 [1987]; Trustees of Columbia Univ. v Mitchell/Giurgola Assoc., 109 AD2d 449, 453 [1st Dept 1985].) A party seeking indemnification *482 therefore “must show that it may not be held responsible in any degree” (Rosado, 66 NY2d at 25), and “a party who has itself actually participated to some degree in the wrongdoing cannot receive the benefit of the doctrine.” (Trustees of Columbia Univ., 109 AD2d at 453; see Richards Plumbing & Heating Co., Inc. v Washington Group Intl., Inc., 59 AD3d 311, 312 [1st Dept 2009]; Kagan v Jacobs, 260 AD2d 442, 442-443 [2d Dept 1999].)
The right to contribution, on the other hand, generally arises when “multiple wrongdoers . . . each owe a duty to plaintiff or to each other and by breaching their respective duties they contribute to plaintiffs ultimate injuries.” (Trustees of Columbia Univ., 109 AD2d at 454; see Raquet, 90 NY2d at 182; Guzman, 69 NY2d at 567; Garrett v Holiday Inns, 58 NY2d 253, 258 [1983]; Trump Vil. Section 3 v New York State Hous. Fin. Agency, 307 AD2d 891, 896 [1st Dept 2003]; see also CPLR 1401.) Contribution may be claimed not only against joint tortfeasors, but also against “concurrent, successive, independent, alternative, and even intentional tort-feasors,” provided their conduct was a contributing cause of the same injury. (Board of Educ. of Hudson City School Dist. v Sargent, Webster, Crenshaw & Folley, 71 NY2d 21, 27 [1987].) A claim for contribution does not require “that each defendant be liable under the same legal theory” (Helmrich v Lilly & Co., 89 AD2d 441, 443 [4th Dept 1982]), but it does require that each defendant have “[potential liability for the same personal injury.” (Id. at 445 [hospital charged with malpractice in treating plaintiff’s cancer could seek contribution from manufacturer of drug allegedly causing cancer]; see Cresswell v Warden, 164 AD2d 855 [2d Dept 1990] [defendant who struck plaintiff while intoxicated could seek contribution from bar providing alcohol, because plaintiff would have claim against bar].) Thus, “[t]he ‘critical requirement’ for apportionment by contribution under CPLR article 14 is that ‘the breach of duty by the contributing party must have had a part in causing or augmenting the injury for which contribution is sought.’ ” (Raquet, 90 NY2d at 183, quoting Nassau Roofing & Sheet Metal Co. v Facilities Dev. Corp., 71 NY2d 599, 603 [1988].)
In this case, plaintiff alleges that BR Guest actually participated in the acts giving rise to his injuries, by unlawfully discriminating against him in the terms and conditions of employment, and by denying benefits to him. Plaintiff does not allege, or otherwise seek to show, that BR Guest is vicariously *483 liable for the alleged negligence of the Transit Authority. Neither are there any claims that the Transit Authority owed plaintiff, or BR Guest, a duty under the NYSHRL or NYCHRL. Any liability of BR Guest in this case would be based on its own wrongdoing, and, alternatively, if it did not violate the State and City Human Rights Laws, it would be free from liability regardless of whether the Transit Authority is found negligent in the separate action against it. (See Trustees of Columbia Univ., 109 AD2d at 453-454; see also Richards Plumbing & Heating Co., Inc., 59 AD3d at 312; Ruiz v Griffin, 50 AD3d 1007, 1009 [2d Dept 2008]; Trump Vil. Section 3, 307 AD2d at 895.) BR Guest therefore is not entitled to indemnification from third-party defendants.[3]
Similarly, BR Guest’s claim for contribution must fail. As noted above, there are no allegations, and no evidence showing, that the Transit Authority owed a duty to plaintiff with respect to the claims under the NYSHRL and NYCHRL. Plaintiff has no cause of action against the Transit Authority for employment discrimination or breach of an employment agreement, and the Transit Authority can have no potential liability for BR Guest’s decisions involving plaintiffs employment. BR Guest also does not identify any separate duty owed by the Transit Authority to defendants/third-party plaintiffs. Absent any duty of the Transit Authority to either BR Guest or plaintiff, BR Guest is not entitled to contribution. (See Raquet, 90 NY2d at 182; Breen v Law Off. of Bruce A. Barket, P.C., 52 AD3d 635, 638 [2d Dept 2008]; Trump Vil. Section 3, 307 AD2d at 896-897; Baratta v Home Depot USA, 303 AD2d 434, 435 [2d Dept 2003].)
Defendants’ apparent argument that the Transit Authority nonetheless contributed to plaintiffs injuries alleged in this case, by causing the disability that was the basis for the discrimination claim, is meritless. (See Stone v Williams, 64 NY2d 639, 641-642 [1984] [plaintiff hit by lurching car at gas station; gas station owner merely furnished the condition or occasion for the accident rather than being a cause].) As discussed above, the NYSHRL and the NYCHRL provide that it is an “unlawful discriminatory practice” for an employer, because of the disability of any person, “to refuse to hire or employ or to bar or to discharge from employment such person or to discriminate against such person in compensation or in terms, condi *484 tions or privileges of employment.” (Administrative Code § 8-107 [1] [a]; see Executive Law § 296 [1] [a].) The statutes also, as previously addressed, require that employers “shall make reasonable accommodation to enable a person with a disability to satisfy the essential requisites of a job.” (Administrative Code § 8-107 [15] [a]; see Executive Law § 296 [3] [a].) It is unclear under what legal theory BR Guest would apply these provisions to the Transit Authority in the instant circumstances, but even assuming arguendo that the Transit Authority’s negligence played a part in causing plaintiffs disabling injuries, the statutes simply do not make it an unlawful discriminatory practice to cause a disability, even if that disability results in discriminatory treatment by an employer. Moreover, to the extent that contribution is available in discrimination cases brought under the NYSHRL and NYCHRL (see Hernandez v Kaisman, 77 AD3d 516, 517 [1st Dept 2010] [contribution claim dismissed without reaching “question of the parameters of the contribution doctrine” under NYSHRL and NYCHRL]), courts have applied it only when the third party actually participated in, or aided and abetted, the discriminatory conduct. (See Rodolico v Unisys Corp., 189 FRD 245, 252 [ED NY 1999] [employer charged with age discrimination in implementation of lay-off policies may have claim against union which participated in developing policies]; cf. Hernandez, 77 AD3d at 517 [in sexual harassment action against company co-owner, contribution claim against other co-owner dismissed absent evidence that he participated in discriminatory conduct].)
There also is no basis for finding, for purposes of contribution, that the alleged employment discrimination based on disability was a “foreseeable consequence” of the alleged negligence of third-party defendants. (Compare e.g. Glaser, 71 NY2d at 647 [alleged negligent treatment of knee injury was foreseeable consequence of store owner negligence causing fall and knee injury]; Gray v Sandoz Pharms., Div. of Sandoz, Inc., 123 AD2d 829, 830 [2d Dept 1986] [question whether negligent treatment by first doctor made likely subsequent negligent treatment by second doctor].) Furthermore, contrary to BR Guest’s contention, the injuries arising out of the two cases are neither the same nor indivisible. Being struck by a bus is, obviously, not the same as being terminated from, or otherwise discriminated against in the terms and conditions of, employment, and the harm resulting from each is separate and distinct. (See Gonzalez v Jacoby & Meyers, 258 AD2d 560, 561 [2d Dept 1999] [injuries *485 from auto accident not the same as injuries from malpractice arising from personal injury action arising out of accident]; see generally Nassau Roofing & Sheet Metal Co., 71 NY2d at 603-604; Marist Coll. v Chazen Envtl. Servs., Inc., 84 AD3d 1181, 1183 [2d Dept 2011]; Tanger v Ferrer, 82 AD3d 564, 565 [1st Dept 2011]; Keeley v Tracy, 301 AD2d 502, 503 [2d Dept 2003]; compare Ravo v Rogatnick, 70 NY2d 305, 312-313 [1987] [brain damage caused by successive and independent liability of two doctors was a single indivisible injury].) To the extent that plaintiff seeks damages for lost earnings and psychological and emotional distress in both cases, any concerns about double recovery, and any possible setoff of damages, can be, if appropriate, addressed at trial.
Accordingly, it is ordered that defendants’ motion for summary judgment (sequence No. 008) is denied; and it is further ordered that the cross motion of plaintiff (sequence No. 008) is granted only to the extent that the parties are directed to expeditiously complete any previously ordered discovery; and it is further ordered that the motion of third-party defendants (sequence No. 007) to dismiss the third-party complaint is granted, and the third-party complaint is severed and dismissed; and it is further ordered that the cross motion of defendants/ third-party plaintiffs for summary judgment on the third-party complaint (sequence No. 007) is denied; and it is further ordered that the action is transferred to the Trial Support Office for reassignment to a non-Transit Authority part; and it is further ordered that plaintiff shall serve a copy of this order, with notice of entry, on the Trial Support Office.

. The parties submit separate portions of deposition transcripts.

. The NYSHRL provides greater protections than the ADA, and the NYCHRL provides even broader protections. (Phillips, 66 AD3d at 176.) Accordingly, it has been held that case law interpreting the ADA provides “interpretative guidance” with respect to claims under the NYSHRL and NYCHRL, but is not binding. (Vig, 67 AD3d at 145.)

. Generally, breach of contract claims are not subject to indemnification or contribution. (See Richards Plumbing & Heating Co., Inc., 59 AD3d at 312.) Defendants do not argue to the contrary.