[811 NYS2d 381]

Sᴏɴɪᴀ Pɪᴍᴇɴᴛᴇʟ, Respondent, v Cɪᴛɪʙᴀɴᴋ, N.A., Appellant.

First Department, March 16, 2006

## APPEARANCES OF COUNSEL

*Sills Cummis Epstein & Gross, P.C.,* New York City (*David W. Garland* and *Jerrold J. Wohlgemuth* of counsel), for appellant.

*Quaranta & Associates,* Mount Kisco (*Merryl F. Weiner* and *Kevin J. Quaranta* of counsel), for respondent.

### OPINION OF THE COURT

CATTERSON, J.

In this action, the plaintiff, Sonia Pimentel, alleges that the defendant, Citibank, unlawfully terminated her employment because of her disability in violation of the New York Human Rights Law (NYHRL) (Executive Law § 296 [1] [a]) and the New York City Human Rights Law (Administrative Code of City of NY § 8-107 [1] [a]). The plaintiff alleges that the defendant discriminated against her by refusing to transfer her to a less stressful position which did not require customer contact, and so violated Executive Law § 296 (3) (a) by failing to reasonably accommodate her disability.

The plaintiff worked for Citibank since August 1979 when she was employed in an entry level position as a clerk/typist. She was subsequently promoted to safe deposit manager and thereafter became involved in customer service. In 1995, the plaintiff became a line manager at the defendant's Washington Heights branch, located in its Financial Center at 181st Street in New York. Two years later, she was promoted to the position of client financial analyst (CFA). Her responsibilities as a CFA included customer sales, such as opening new accounts, and customer service which required her to respond to customer problems and inquiries about accounts and to handle estate accounts. In 1999, the plaintiff began suffering from depression and anxiety. She testified at her deposition that her anxiety and stress were partly the result of a test she had to take to satisfy a new job requirement. She failed the test twice in 1999, learning of her failed second attempt on August 19, 1999, the day before she started her vacation.

After taking time off for the vacation from August 20th to September 7, 1999, she did not return to work. On or about August 31, 1999, plaintiff's primary care physician, Dr. Claire

M. Spininger, provided her with a note which stated that plaintiff was under her care and could not return to work until further notice. Her psychologist, Dr. Michael Glazer, testified that "she was having the typical symptoms of anxiety attacks . . . a fluttering inside herself, a disorganization of her thinking, a restlessness, a certain internal discomfort . . . ."

The plaintiff told Dr. Glazer that the primary stressor was her employment at Citibank. She admitted that failing the test contributed to her stress but also testified as to other stressful family-related factors. In describing her job-related stress, the plaintiff "was concerned about her treatment by customers" who were "rude," "demanding" and "critical of her."

Dr. Glazer additionally testified at deposition that the plaintiff had told him that she felt "shabbily" treated by her supervisor; that she went to her supervisor complaining of mistreatment by her customers; that she felt "blown off" by her supervisor, and "unsupported and uncared for."

By letter dated September 2, 1999, Dr. Glazer stated that the plaintiff was seeing him for weekly psychotherapy and could not return to work at that time. On that same date, the plaintiff telephoned her supervisor, Magda Genao, and informed her that she was not feeling well and had been referred to a therapist. At approximately the same time, the plaintiff applied for disability benefits due to depression. On or about September 16, 1999, the claims administrator for the defendant's CNA disability plan advised the plaintiff that she had approved her claim for disability benefits through September 30, 1999. The period of her disability was subsequently extended several times through February 27, 2000.

Meanwhile, on December 13, 1999, the plaintiff contacted Ms. Genao and indicated she would like to return to work. On December 16, 1999, Dr. Glazer advised CNA, by fax, that the plaintiff was ready to return to work "on a reduced level." The faxed letter stated that the plaintiff "does not feel capable of servicing customers at this time and hopes to be placed in a less stressful position." On December 22nd, the plaintiff again sought Ms. Genao's help and requested a list of available job postings. Ms. Genao stated that she had to speak with her boss and would get back to plaintiff.

On February 22, 2000, the plaintiff wrote to Jacqueline Smiley-Edwards, a Citibank human resources representative, stating that she was "ready to resume limited duties." The plaintiff enclosed a copy of Dr. Glazer's December 16, 1999 let-

ter with her letter to Smiley-Edwards, who spoke to the plaintiff on the telephone on February 29, 2000, and again on March 6th. On the latter date, Smiley-Edwards told the plaintiff that her only choices were to return to her prior position as CFA or to continue disability. On March 9th, the plaintiff again spoke with Smiley-Edwards who informed her that her six months of disability leave had expired and that if she wanted to continue on disability, she would have to speak with CNA and apply for long-term disability. The plaintiff, however, did not want to receive long-term disability benefits. She stated that she wanted to go back to work and "re-establish her life." In October 2000, she was notified in writing that her employment had been terminated since her approved disability leave of absence had ended on May 1, and she had failed to return to work at the end of that leave.

The plaintiff commenced the instant action alleging employment discrimination and that the defendant unlawfully terminated her employment in violation of Executive Law § 296 and Administrative Code § 8-107.

After the defendant interposed an answer and some discovery had taken place, the defendant moved for summary judgment seeking dismissal of the complaint on the ground that the plaintiff failed to establish a prima facie case of employment discrimination. The plaintiff cross-moved for an order directing the defendant to comply with her interrogatories and to produce further deposition witnesses. The court denied the defendant's motion "without prejudice to renewal upon the completion of all pre-trial discovery."

The court noted that the plaintiff alleged that the defendant had failed to comply with its own policy regarding employees on leave and had merely referred the plaintiff to the disability unit rather than informing her of available alternate positions she could have filled notwithstanding her disability. The court held that the plaintiff could establish a prima facie case of employment discrimination by demonstrating that she had a contractual right to transfer or that there was an established policy of such transfers. It noted that the defendant had not furnished any objective evidence that it engaged in an interactive process to determine what a reasonable accommodation would have been under the circumstances.

The defendant moved to renew the motion following the completion of discovery. The court denied the renewal, holding that there were "issues of fact which foreclose dismissal." In

particular, the court below noted that the plaintiff alleged that she was "stonewalled" by her supervisor, and that she had denied making any statements that she was unable to work in any position involving human contact. The court further noted that "since the defendants [sic] had stopped her from ascertaining whether any appropriate positions were available, she was effectively prevented from benefitting from the Citibank policy that was applied to all of its other disabled employees with more than ten years experience." The lower court then concluded that pursuant to Citibank's own employee guide the plaintiff was "entitled to seek a return to the 'same or suitable' job with Citibank."

We disagree, and reverse. For the reasons set forth below we grant summary judgment to the defendant.

In order to state a prima facie case of employment discrimination due to a disability under both New York's Executive Law and the City's Administrative Code, the plaintiff must demonstrate that he or she suffered from a disability and that the disability caused the behavior for which he or she was terminated. (*Matter of McEniry v Landi*, 84 NY2d 554, 558 [1994]; *see Timashpolsky v State Univ. of N.Y. Health Science Ctr. at Brooklyn*, 306 AD2d 271, 272 [2d Dept 2003], *lv denied* 1 NY3d 507 [2004].) The term "disability" is defined as "physical, medical or mental impairments that 'do not prevent the complainant from performing in a reasonable manner the activities involved in the job.' " (*Pembroke v New York State Off. of Ct. Admin.*, 306 AD2d 185, 185 [1st Dept 2003], quoting Executive Law § 292 [former 21].)

It is well-established that the statutory duty of a New York employer under New York's Human Rights Law is to "provide reasonable accommodations to the known disabilities of an employee . . . in connection with a job or occupation sought or held." (Executive Law § 296 [3] [a].) Further, "reasonable accommodation" is defined as actions taken by employer which "permit an employee . . . with a disability to perform in a reasonable manner the activities involved in the job or occupation sought or held . . . provided, however that such actions do not impose an undue hardship on the business." (Executive Law § 292 [21-e].) New York City's Human Rights Law requires that an employer "shall make reasonable accommodation to enable a person with a disability to satisfy the essential requisites of a job." (Administrative Code § 8-107 [15] [a].)

The issue of whether the plaintiff suffered a disability as defined by the New York statutes is not in contention. The de-

fendant argues, however, that in order for the plaintiff to be protected under the NYHRL as a disabled employee, she was required to establish at least that she was capable of performing the essential functions of her job with reasonable accommodation. (*See Fama v American Intl. Group*, 306 AD2d 310 [2d Dept 2003], *lv denied* 1 NY3d 508 [2004].) The defendant further argues that it lawfully terminated the plaintiff's employment because she could not perform the essential functions of her customer service job, even with accommodation.

There is no dispute that customer service was an essential function of the plaintiff's CFA position. The plaintiff clearly acknowledged at her deposition that she was not able to engage in any customer contact due to her anxiety condition at the time her eligibility for continued disability leave expired. We find merit, therefore, in the defendant's argument that the plaintiff's admission that she could not perform in any job that required customer contact was tantamount to an admission that she could not perform the essential functions of the job she held, even with reasonable accommodation.

The inquiry does not end here, however. Under the State's Human Rights Law, as amended to become effective in 1998, an employee can still prevail by showing that she requested and was refused reasonable accommodations. (*Pembroke v New York State Off. of Ct. Admin.*, 306 AD2d at 185.) In this case, the plaintiff alleges that the reasonable accommodation she requested, and which the defendant refused, was a transfer to a position that did not require customer contact. The plaintiff maintains that the defendant had an obligation to transfer her to such position as a reasonable accommodation of her disability. She additionally claims that her efforts to return to work with such a reasonable accommodation were repeatedly thwarted, and she was not assisted in locating other available positions.

Initially, we consider whether the defendant's statutory obligation to provide "reasonable accommodation" extends to reassignment or transfer of the plaintiff to another position. We note that such obligation may exist pursuant to Executive Law § 292 (21-e) pursuant to which "reasonable accommodations" include, but are not limited to, "provision of an accessible worksite, acquisition or modification of equipment, support services for persons with impaired hearing or vision, job restructuring and modified work schedules." Effective August 1999, the Division of Human Rights recognized that section 292 (21-e) should

include "reassignment to an available position." (9 NYCRR 466.11 [a] [1], [2].)

In expanding the "reasonable accommodations" definition to include "reassignment to an available position," the Division of Human Rights mimicked the language of the "reasonable accommodations" provision of the Americans with Disabilities Act (ADA) which uses the phrase "reassignment to a vacant position." (42 USC § 12111 [9] [B].) In so doing, it appears to have intended that, like the ADA provision, the NYHRL provision should allow disabled employees, unable to perform in their current jobs because of disability, to require employers to transfer them to other vacant positions in which they are capable of performing. (*Jackan v New York State Dept. of Labor*, 205 F3d 562, 565-566 [2d Cir 2000], *cert denied* 531 US 931 [2000]; *Smith v Midland Brake, Inc., a Div. of Echlin, Inc.*, 180 F3d 1154, 1161, 1161-1163 [10th Cir 1999] [although a disabled individual seeking protection of the ADA has to be someone who can perform the essential functions of a job, "that inquiry is not limited to the employee's existing job"].)[1]

The provision, however, is not as broad in scope as appears at first glance. While case law interpreting this provision pursuant to a NYHRL claim is virtually nonexistent, federal courts determining claims brought pursuant to the ADA have long held that the provision is subject to strict limitations.[2]

The Second Circuit has followed the majority of circuits in determining that a plaintiff has the burden of production and persuasion. That is, a plaintiff seeking to hold a New York employer liable for a failure to make a transfer as a reasonable accommodation, has the burden of demonstrating that a vacant funded position exists and that plaintiff was qualified to fill that position. (*Jackan v New York State Dept. of Labor*, 205 F3d at 567.)

---

1. The 10th Circuit looked to legislative history to support this reading, and referred to the House Committee on Education and Labor's report whereby the committee stated that reasonable accommodation could include reassignment to a vacant position since "transfer to another vacant job for which the person is qualified may prevent the employee from being out of work and [the] employer from losing a valuable worker." (*Smith v Midland Brake*, 180 F3d at 1161-1162, quoting HR Rep No. 101-485 [II], 101st Cong, 2d Sess, at 63 [1990], reprinted in 1990 US Code Cong & Admin News, at 303, 345.)

2. State disability discrimination claims are governed by the same legal standards as federal ADA claims. (*Rodal v Anesthesia Group of Onondaga, P.C.*, 369 F3d 113, 117 n 1 [2d Cir 2004].)

The provision does not require an employer to find another job for the employee or to create the job, or to reassign if no position is open. (*Mitchell v Washingtonville Cent. School Dist.*, 190 F3d 1, 9 [2d Cir 1999].) Nor are employers required to retrain and assign disabled employees to entirely different positions. (*Id.*) Specifically, an employer is not obligated to provide the disabled employee with accommodation that the employee "requests or prefers." (*Gile v United Airlines, Inc.*, 95 F3d 492, 499 [7th Cir 1996]; *see also Gaul v Lucent Tech., Inc.*, 134 F3d 576, 581 [3d Cir 1998] [ADA reasonable accommodation provision did not require transfer away from individuals who caused the plaintiff employee "prolonged and inordinate stress"]; *Potter v Xerox Corp.*, 88 F Supp 2d 109, 114 [WD NY 2000], *affd* 242 F3d 367 [2d Cir 2001] [unpublished op; text at 1 Fed Appx 34] [employer not expected to provide stress-free environment].)

In any event, it is clear that a proponent of a NYHRL claim has the burden of establishing that she proposed a reasonable accommodation and that the defendant refused to make such accommodation. (*Pembroke v New York State Off. of Ct. Admin.*, 306 AD2d at 185, citing *Moritz v Frontier Airlines, Inc.*, 147 F3d 784, 787 [8th Cir 1998].)

The obligation of reasonable accommodation is also limited to the employer's knowledge of the disability that needs to be accommodated. (*Beck v University of Wis. Bd. of Regents*, 75 F3d 1130, 1135 [7th Cir 1996].) In this case, the defendant cannot be held liable for failing to provide the plaintiff with an accommodation since she failed to adequately explain the extent and limits of her restrictions. In the plaintiff's first communication with her supervisor in early December, she said she was ready to return to work and asked if there were any other jobs available to her. A few days later, her psychologist, Dr. Glazer, by fax, advised the defendant that the plaintiff was ready to return to work on "a reduced level." The fax stated that the plaintiff "does not feel capable of servicing customers at this time and hopes to be placed in a less stressful position."

In February, the plaintiff wrote to the defendant's human resources representative and stated that she was ready to "resume limited duties." The plaintiff, at this time, did not indicate whether she was requesting a modified work schedule or a light-duty assignment. Nor did she suggest any alternative positions for which she was qualified, much less for which a vacancy existed at the time. It was only after her termination, during depositions, that she raised the idea of secretarial or clerical work with limited customer contact.

Arguably, disability discrimination statutes, whether federal or state, envisage employer and employee engaged in an interactive process in arriving at a reasonable accommodation for a disabled employee. (*Parker v Columbia Pictures Indus.*, 204 F3d 326, 338 [2d Cir 2000].) The employer has the responsibility to investigate an employee's request for accommodation and determine its feasibility."An employer who fails to do so, and instead terminates the employee based on exhaustion of leave, has discriminated 'because of' disability within the meaning of the [law]." (*Id.*)

In this case, the motion court improperly determined that the defendant failed to engage in such interactive communication. It was the plaintiff in this case who failed to meet her burden. She neither specified the accommodations sought nor showed that she could perform a particular job. The record reflects that the plaintiff

> "*did not* advise either the defendant or the claims administrator that she could return to work in a position with limited customer contact, but consistently stated that she could not handle *any* customer contact, and could not work in a position in which she would have to be in contact with other 'people.' "

Indeed, despite the motion court's finding that an issue of fact exists as to whether the plaintiff stated that she could not work in any position of human contact, we find that the record clearly establishes that the plaintiff testified precisely to that limitation. The plaintiff testified at her deposition that in November 1999 she had conversations with CNA during which she told the administrator she could work in a position "where she did not have to be around people." The plaintiff further testified that as late as March 2000, her sixth month of disability leave, she told CNA that she still could not work, that she was not prepared to "go out" and "work with others."

The plaintiff's testimony therefore validates the testimony of the defendant's human resources representative, Ms. Smiley-Edwards, who testified that in early 2000, in a telephone conversation, the plaintiff requested "to return to a position with no customer or people contact." Thus, the plaintiff also failed to meet the burden of showing that she proposed a *reasonable* accommodation.

Nevertheless, the record shows that Smiley-Edwards inquired within the company about positions that "required no customer

or people contact" and was informed that there were no positions without "people" contact. Smiley-Edwards then advised the plaintiff to continue with her disability leave until she felt better. The plaintiff subsequently decided that she did not want to apply for long-term disability, and was therefore deemed "inactive" and so was terminated by defendant.

We next turn to the motion court's ruling that the plaintiff can make out a prima facie case of employment discrimination by showing that she had a contractual right to transfer or that the defendant had an established policy of such transfers.[3] We reject any claim by the plaintiff based on a contractual right since the plaintiff did not allege a cause of action for breach of contract. We also find that the plaintiff has failed to make out a prima facie case of employment discrimination on the grounds that the defendant foreclosed transfer opportunities that were available to others of her tenure. The plaintiff maintains, on appeal, that the defendant has an established policy of allowing disabled employees to return from disability leave to "the same or suitable" positions. The plaintiff further asserts that under such alleged policy she had the qualifications to perform several "suitable" jobs where she defines "suitable" as those jobs that "would have accommodated [her] disability." In particular, the plaintiff indicated in her deposition that she wanted to return to a job such as secretarial or clerical work.

The plaintiff, however, does not cite any cases in her brief and so her assertion as to what constitutes a "suitable" position is not supported by any legal authority. The plaintiff only cites to paragraphs in defendant's "Management Guide" and to paragraphs in "The Big Book," which is defendant's guide to employee benefits, to assert that she was entitled to a job suited to the limitations imposed by her disability. These paragraphs address the defendant's "job restoration" policies stating that,

> "job return provisions for employees on approved disability or on approved unpaid medical leave are as follows: Regular employees with 10 or more years

---

**3.** In making this determination, the motion court used the language of, and cited to a holding that is no longer generally considered good law. The rule that disabled employees have no right to transfer or reassignment "absent a contractual right or an established policy of the employer to make such transfers" predates the 1992 amendment to the Rehabilitation Act and the 1990 enactment of the ADA with its "reassignment to an available position" option as a reasonable accommodation. (John E. Murray and Christopher J. Murray, *Enabling the Disabled: Reassignment and the ADA*, 83 Marq L Rev 721, 726 [2000].)

of service who are on approved disability leave and who return to work between the 12th week and six months of their leave are reinstated to the same *or suitable* job." (Emphasis added.)

The plaintiff claims that "it is quite evident from defendant's own human resource handbooks that defendant was obligated to transfer her to a job that "would have accommodated [her] disability." We disagree.[4]

Ultimately, as the defendant asserts, the record shows that the defendant's job return provisions allowed long-term employees, like the plaintiff, to return from disability leave to "the same or suitable" job only when authorized by CNA to return before the expiration of the six-month leave period. In this case, no such authorization was forthcoming. Nor does the plaintiff dispute this fact.

For the foregoing reasons, we find that no triable issues of fact exist. We find that the plaintiff failed to propose reasonable accommodation and that a request for an alternative position without customer or people contact and at a reduced level of stress is unreasonable as a matter of law. We also find that the plaintiff failed to establish that the defendant discriminated against her by foreclosing opportunities of transfer or reassignment offered to others of her tenure.

Accordingly, the order of the Supreme Court, Bronx County (Bertram Katz, J.), entered October 5, 2004, which denied defendant's motion to renew a prior order and decision dated April 11, 2003, denying defendant's motion for summary judgment, should be reversed, on the law, without costs, and the motion granted. The Clerk is directed to enter judgment in favor of defendant dismissing the complaint.

ANDRIAS, J. (dissenting). I dissent and would affirm the denial of Citibank's motion for summary judgment dismissing plaintiff's claim of employment discrimination.

As properly held by the IAS court, construing it in a light

---

4. Our review of the record, in particular the defendant's statement of its policies, prompts us to note that the provisions appear to have been drafted to comply with federal laws and regulations like the Family and Medical Leave Act. In that context, we view the phrase "same or suitable job" as one that supports the rationale of federal and state "leave" laws to provide job security for an employee who takes leave, and generally desires to return to the same position, and same conditions and terms of employment, as the employee held previously. Clearly, under that reading, the defendant complied with its own policies by keeping the plaintiff's prior job as CFA open and available to her.

most favorable to plaintiff, as we must with regard to the party moved against, the evidence indicating that Citibank terminated plaintiff, a 20-year employee with an unblemished work history, at the conclusion of her short-term disability leave without attempting to offer her a reasonable accommodation for her disability that would permit her return to work, as plaintiff had repeatedly requested, was sufficient to raise a triable issue as to whether defendant impermissibly discriminated against plaintiff by reason of her disability (*see Parker v Columbia Pictures Indus.*, 204 F3d 326, 338 [2d Cir 2000]; Executive Law § 292 [21]).

The majority's conclusion that plaintiff failed to propose reasonable accommodation and that her request for an alternative position "without customer or people contact" is unreasonable as a matter of law is based upon inferences which are based upon its interpretation of conflicting testimony by plaintiff and Citibank employees. What is uncontradicted is plaintiff's allegation, supported by the testimony of Ms. Smiley-Edwards, her supervisor Ms. Genao, and CNA's claims administrator, that after she asked Citibank to help her find an alternative position in the company, it did absolutely nothing to attempt to ascertain whether there were any available positions that fit her varied experience and qualifications. Instead, she was given the "take it or leave it" option of returning to her old job or being terminated.

That cannot be deemed, as a matter of law, to be the interactive process envisioned by both state and federal disability discrimination statutes and is insufficient to satisfy Citibank's statutory obligation to provide "reasonable accommodation."

MAZZARELLI, J.P., and GONZALEZ, JJ., concur with CATTERSON, J.; ANDRIAS, J., dissents in a separate opinion.

Order, Supreme Court, Bronx County, entered October 5, 2004, reversed, on the law, without costs, and defendant's motion to renew a prior order with respect to its motion for summary judgment granted. The Clerk is directed to enter judgment in favor of defendant dismissing the complaint.