■ WILLIAM JACOBSEN, Appellant, v NEW YORK CITY HEALTH AND HOSPITALS CORPORATION, Respondent. [948 NYS2d 586]—

Plaintiff alleges that he was wrongfully terminated from his position because of a disability, in violation of the New York State Human Rights Law (Executive Law § 296 [1] [a]) and the New York City Human Rights Law (Administrative Code of City of NY § 8-107 [1] [a]). In 1979, plaintiff began working as an assistant health facilities planner with defendant, New York City Health and Hospitals Corporation (HHC). Plaintiff monitored the independent contractors on construction and renovation jobs at facilities operated by HHC. He would visit the job sites one or two days a week to meet with facility directors, examine existing structures, and review and supervise the contractors' work. Plaintiff would spend the remaining work week at HHC's central office in Manhattan, completing written and oral reports on the progress of various projects.

In 1982, plaintiff was promoted to Health Facilities Planner, and although this promotion assigned him to larger projects, his daily tasks remained the same. In August 2005, plaintiff was assigned to the Queens Hospital Network, whose main hospital was undergoing major renovation. As a result of this reassignment, plaintiff's office was relocated to Queens Hospital and he only worked at the central office once a week or every other week, to attend meetings. Plaintiff was also required to visit construction areas at Queens Hospital on a daily basis.

In September 2005, plaintiff was diagnosed with pneumoconiosis, an occupational lung disease. In October 2005, plaintiff requested, and was granted, a medical leave of absence. Plaintiff's physician, Dr. Skloot, stated on plaintiff's application for leave that he "currently cannot perform usual tasks" and that he was unable to perform any one or more of the essential functions of his job since he "should not be exposed to inhaled dusts." In a December 2005 letter to HHC, Dr. Skloot cleared plaintiff to return to work on January 3, 2006, but directed that he not be present at any construction site. HHC sent a follow-up letter to Dr. Skloot listing plaintiff's duties and explaining that he is required to spend approximately 75% of his time in the field monitoring construction sites. HHC asked for clarification as to whether or not, based on the provided information, plaintiff was cleared to fully perform the "essential functions of his duties."

On January 5, 2006, plaintiff's union representative sent a letter to HHC requesting that plaintiff be permitted to return to work with an accommodation of being assigned work "that he is capable of doing in the office." On March 21, 2006, plaintiff provided another letter from Dr. Skloot stating that he was medically cleared to work in the field. Plaintiff returned to work at the Queens Hospital location on March 27, 2006.

From March until May of 2006, plaintiff did not request any further accommodation from HHC and continued to make field visits during this time. On May 10, plaintiff sent a letter to his supervisor in the central office, Vincent James, requesting relocation to that office as a reasonable accommodation. James determined that plaintiff needed to spend approximately 80% of his time in the field, which included visiting construction sites, to fully complete the "essential functions" of his position. James explained that eliminating all construction sites from plaintiff's duties would make it impossible for him to perform his job.

By letter dated June 6, 2006, HHC informed plaintiff that he would be placed on unpaid medical leave for six months and his job would be left open in the event that his condition improved. The letter explained that plaintiff's proposed accommodation, relocation to the central office, was infeasible because plaintiff's position required that he visit facilities that have ongoing construction. In August 2006, Dr. Skloot wrote to HHC in response to a request for clarification of plaintiff's medical condition. Dr. Skloot advised that plaintiff could never be medically cleared to perform the essential functions of his current duties because he should not be further exposed to any type of environmental dust. Dr. Skloot further stated that plaintiff was cleared to do office work only. On March 26, 2007, at the conclusion of the six months of unpaid leave, plaintiff's employment was terminated.

Plaintiff subsequently commenced this action for wrongful termination because of a disability. Defendant moved for summary judgment, arguing that plaintiff's termination was proper insofar as he was unable to perform an essential function of his position—namely, visiting construction sites to inspect the progress of construction. The motion court properly granted summary judgment, finding that plaintiff's job, by his own admission, required him to spend substantial time at construction sites. The motion court further concluded that since plaintiff's own doctor determined that he could not spend time in the field, the inevitable conclusion was that he could never return to his duties.

The majority and the dissent agree on the basic law appli-

cable to this case. To state a prima facie case of employment discrimination due to a disability, a plaintiff must demonstrate that he or she suffered from a disability and that the disability caused the behavior for which he or she was terminated (*Matter of McEniry v Landi*, 84 NY2d 554, 558 [1994]). Once a plaintiff establishes a prima facie case, the burden shifts to the employer, here HHC, to show that the disability prevented plaintiff "from performing the duties of the job in a reasonable manner or that the employee's termination was motivated by a legitimate nondiscriminatory reason" (*id.*). HHC met its burden by establishing that at the time of termination, plaintiff was unable to perform the duties of his job because of his lung condition and that no reasonable accommodation was available.

Under the Executive Law, a "reasonable accommodation" is defined as "actions taken by [an] employer which permit an employee . . . with a disability to perform in a reasonable manner the activities involved in the job or occupation sought or held . . . provided, however, that such actions do not impose an undue hardship on the business" (*Pimentel v Citibank, N.A.*, 29 AD3d 141, 145 [2006], *lv denied* 7 NY3d 707 [2006], quoting Executive Law § 292 [21-e]). Under the City's Human Rights Law, an employer "shall make reasonable accommodation to enable a person with a disability to satisfy the essential requisites of a job" (Administrative Code § 8-107 [15] [a]). An employer is not required to find another job for the employee, create a new job, or create a light-duty version of the current job (*Pimentel*, 29 AD3d at 148).

HHC established that plaintiff could not, even with a reasonable accommodation, perform the essential functions of his job (Executive Law § 292 [21]; Administrative Code § 8-107 [15]). Vincent James, plaintiff's supervisor at the central office, testified that plaintiff's position required him to spend the majority of his time at construction sites. The only way plaintiff would be able to report on construction progress was to be present at the site; therefore, it was not possible for plaintiff to complete his duties from the central office. HHC pointed to letters from Dr. Skloot and plaintiff's own deposition testimony in which he admits that he can no longer visit construction sites, which was the bulk of his work. Although plaintiff claimed he could perform all his duties from the central office, he failed to explain how he could monitor the progress of construction and renovation projects, an essential function of his job, from the central office without visiting the sites.

Under both New York's Executive Law and the City's Administrative Code, an employer is required to perform an in-

dividual assessment of an employee prior to terminating him (*Bellamy v City of New York*, 14 AD3d 462 [2005]). This assessment must be part of a "good faith interactive process" (*Phillips v City of New York*, 66 AD3d 170, 175 [2009]). Contrary to the dissent's finding, the record shows that HHC engaged in an interactive process. HHC sought clarification from Dr. Skloot regarding plaintiff's medical condition and his ability to perform his job. Indeed, they kept plaintiff's job open during two separate medical leaves, during which time HHC was in communication with plaintiff and his doctor. HHC provided Dr. Skloot with plaintiff's job description and made her aware that plaintiff was required to spend a portion of his time in the field at construction sites. It was only after plaintiff's doctor and plaintiff himself confirmed that he could no longer work at construction sites that HHC terminated him.

Plaintiff also contends that HHC failed to make a reasonable accommodation by assigning him back to Queens Hospital in March 2006 without providing him with proper respiratory equipment that would prevent any further exacerbation of his lung condition. However, plaintiff focused below on HHC's denial of his request to work in an office, not on the adequacy of the equipment provided to him. In fact, plaintiff's affidavit in opposition to the motion for summary judgment stated that HHC could have relocated him to the central office. It is only on appeal that plaintiff focuses on the argument that he could have remained at Queens Hospital full-time as long as he had proper respiratory equipment.

The dissent contends that HHC did not engage in an interactive process regarding the respiratory equipment, and as support, points to plaintiff's deposition testimony that at some point in March 2006, he complained to his supervisor at Queens Hospital about the dust and requested a respirator. However, plaintiff also stated at his deposition that after complaining about the dust, he was provided with a dust mask. Plaintiff testified he did not consistently wear that mask because it made it difficult to communicate. Thus, having failed to wear the mask given to him, plaintiff can hardly complain he never got protection. Further, although plaintiff now argues that the dust mask was inadequate, he never made any additional complaints to his supervisor or anyone else about it, nor did he request different equipment than what he was given. Finally, all of the letters that plaintiff relies on, from his doctor, union representative, and plaintiff himself, make a request for relocation to the central office or an environment free of dust. None of the letters ask for a respirator so that plaintiff could remain at the

Queens Hospital location. In this case, HHC should not be held responsible for not engaging further with plaintiff about the respirator when plaintiff's own doctor provided documentation supporting a transfer to an office job as the solution for plaintiff's disability.

The motion court also properly dismissed plaintiff's claim of gross negligence since the action was not commenced until more than three years after the claim accrued (*see* McKinney's Uncons Laws of NY § 7401 [2] [New York City Health and Hospitals Corporation Act § 20, as added by L 1969, ch 1016, § 1, as amended]). Plaintiff's argument that the claim accrued on the date of his termination is without merit since the claim for gross negligence arose from personal injuries caused by alleged exposure to asbestos and not from his termination. In any event, plaintiff's action is barred by operation of the Workers' Compensation Law (*see Acevedo v Consolidated Edison Co. of N.Y.*, 189 AD2d 497 [1993], *lv dismissed* 82 NY2d 748 [1993]; Workers' Compensation Law § 11).

We have considered plaintiff's remaining contentions and find them unavailing. Concur—Tom, J.P., Catterson, DeGrasse and Richter, JJ.

Manzanet-Daniels, J., dissents in part in a memorandum as follows: I agree with the majority that the motion court properly dismissed plaintiff's claim of gross negligence; I disagree, however, with the decision to the extent it affirms dismissal of plaintiff's claims for disability discrimination. Plaintiff alleges that defendant failed to provide him with the required safety equipment, and denied his reasonable request for reassignment to a prior position or for a respirator to limit exposure to the asbestos and environmental dust he encountered at the work site. It is undisputed that plaintiff, a long-time employee of HHC, suffers from disabling, chronic lung disease as a result of occupational exposure to construction dust.

For 26 years, plaintiff worked out of HHC's central office at 346 Broadway in Manhattan. While there, he worked principally in the office and made site visits, on average, once or twice per week.[3] In August 2005, plaintiff's assignment was changed from the Bellevue Network to the Queens Hospital Network, whose main hospital was undergoing major renovation, including asbestos abatement. Plaintiff had an office at Queens Hospital

---

**3.** Plaintiff served first as a health facilities manager, and later as a network manager. He testified that his duties remained the same, despite the change in job title.

Center, and visited construction sites on a daily basis.[4] Plaintiff testified that at no time prior to his transfer, nor at any time thereafter, was he provided with respiratory equipment by his employer. He testified that he had been provided with a "dust mask" at Queens Hospital, but explained that a dust mask is insufficient protection since, unlike a respirator, it is not specifically designed to filter particulates. He testified that he had requested a respirator from Anita O'Brien, his supervisor at the time, but that such request was never granted.

In September 2005, plaintiff was diagnosed with pneumoconiosis, an occupational lung disease. On or about October 17, 2005, plaintiff's request for a medical leave of absence under the Family and Medical Leave Act was approved retroactively for the period September 9, 2005 to December 2, 2005. Plaintiff provided HHC with a letter from his pulmonologist, Dr. Skloot, dated December 6, 2005, indicating that his condition had improved with steroid treatment, and that he was ready to return to work, but stating that it was "imperative that he not be further exposed to any type of environmental dust. Specifically, this means that he cannot be present at any construction site."

On January 3, 2006, when plaintiff returned to work, he was told there were "problems" and that he should go home until called. On or about January 5, 2006, plaintiff's union representative requested that a reasonable accommodation be made on plaintiff's behalf and that he be assigned work capable of being performed in an office.

On March 21, 2006, Dr. Skloot wrote that plaintiff had demonstrated "significant clinical improvement," and was ready to return to work immediately. She stated that "he is medically cleared to work in the field," further noting that she had advised plaintiff that it was "imperative that he not be exposed to any type of environmental dust," and that plaintiff had assured her that his field work would not include such exposure.

On March 27, 2006, plaintiff returned to work, and while he believed, based on his doctor's note, that he would be returning to the central office and only occasionally visiting construction sites, he was sent back to Queens Hospital to the same network manager position he had occupied before his medical leave. Plaintiff testified that he complained about the dust to his supervisor at Queens Hospital on several occasions from March to May 2006, and requested a respirator as a reasonable accom-

---

4. Plaintiff testified that construction was also ongoing in his office at Queens Hospital, explaining that HHC was installing a refrigeration air conditioning system for the building.

modation. Plaintiff testified that in March 2006 he was capable of performing his job out of the central office. When required to visit construction sites, he could do so with proper respiratory protection.

On May 10, 2006, plaintiff requested immediate reassignment to the central office as a reasonable accommodation. Plaintiff stated that he was able to perform any and all functions that had been assigned to him prior to his relocation to Queens Hospital Center. In support of his request, plaintiff submitted a letter from Dr. Stephen M. Levin of Mt. Sinai Hospital, who was treating plaintiff for "severe, impairing scarring lung disease, the result of prior inhalation exposures to asbestos and other mineral dusts in his work environment." Dr. Levin strongly recommended that plaintiff be "placed in a work setting free from exposure to airborne irritant or fibrogenic dusts, fumes and gases."

The request was denied. On June 6, 2006, plaintiff was placed on unpaid medical leave and his job was left open in the event that his condition improved. On March 26, 2007, at the end of the leave, plaintiff's employment was terminated.

It is undisputed that plaintiff suffers from severe, degenerative lung disease. He has suffered numerous pulmonary complications as a result of his condition, including a pneumothorax, or collapsed lung, and will eventually need a lung transplant.

On or about March 10, 2008, plaintiff commenced suit against HHC by service of a summons and verified complaint. Plaintiff's complaint alleged disability discrimination in violation of the State Human Rights Law (Executive Law § 296) and the New York City Human Rights Law (Administrative Code of City of NY § 8-107), and gross negligence.

Defendant moved for summary judgment. The court granted the motion, finding that "[p]laintiff's own medical evidence, from his doctor's letter, leads to the inevitable conclusion that the plaintiff cannot, for medical reasons, spend any time at a construction site, and therefor [sic], can never return to his old duties. By the plaintiff's own evidence, he has not been discriminated against." I disagree. Plaintiff's submissions raise triable issues of fact. Plaintiff testified that he was capable of performing his job during the spring of 2006. His doctor's letter granting medical clearance stated that plaintiff was capable of performing his job so long as his exposure to construction dust was limited. Defendant asserts that plaintiff was unable to visit construction sites, but plaintiff testified that he could visit sites so long as he was provided with proper respiratory protection.

Thus, a triable issue of fact exists as to whether plaintiff was capable of performing the essential functions of his job.

A triable issue of fact also exists as to whether defendant made a reasonable accommodation for plaintiff's disability. Under the State Human Rights Law, an employer is obligated to "provide reasonable accommodations to the known disabilities of an employee . . . in connection with a job or occupation sought or held" (Executive Law § 296 [3] [a]; *Pimentel v Citibank, N.A.*, 29 AD3d 141, 145 [2006], *lv denied* 7 NY3d 707 [2006]). "Reasonable accommodation" is defined as actions taken by an employer which "permit an employee . . . with a disability to perform in a reasonable manner the activities involved in the job or occupation sought or held . . . provided, however, that such actions do not impose an undue hardship on the business" (Executive Law § 292 [21-e]). Similarly, the City's Human Rights Law requires that an employer "shall make reasonable accommodation to enable a person with a disability to satisfy the essential requisites of a job" (Administrative Code § 8-107 [15] [a]).

There is no dispute that plaintiff suffered from a "disability" within the meaning of the relevant statutes. Plaintiff had asthma and pulmonary problems as of the date of his reassignment from the main office to the Queens Hospital construction site. In September 2005, several months after his reassignment, he was diagnosed with pneumoconiosis, an occupational lung disease, and was found, upon biopsy, to have asbestos, silicates and other construction materials in his lungs.

Under the Executive Law, "reasonable accommodation" includes, but is not limited to, "provision of an accessible worksite, acquisition or modification of equipment, support services for persons with impaired hearing or vision, job restructuring and modified work schedules" (Executive Law § 292 [21-e]). The Division of Human Rights also recognizes that "reasonable accommodation" may include "reassignment to an available position" (9 NYCRR 466.11 [a] [1], [2]).

Plaintiff testified that he complained to his supervisor about airborne dust several times during the March 2006 through May 2006 time frame, and that he specifically requested respiratory protection. He requested reassignment when his supervisor failed to grant his request. As plaintiff notes, defendant could have accommodated his disability by (1) reassigning him to the central office, where, for more than 20 years, he performed field visits on a once a week basis; or (2) assigning him to the Queens Hospital construction site with the requisite respiratory equipment to prevent further exacerbation of his

condition. Defendant did neither. Indeed, there is no evidence that defendant engaged in a good faith interactive process to assess the needs of plaintiff and the reasonableness of the accommodation requested, the first step in providing a reasonable accommodation (*see Phillips v City of New York*, 66 AD3d 170, 176 [2009]). We have stated that the failure to consider the requested accommodation by engaging in an individualized, interactive process is a violation of the state and city statutes (*id.*).

As the majority notes, the record showed that defendant employer provided plaintiff with an ordinary cloth dust mask. However, the provision of a dust mask, of the type to be found in any hardware store, is not a "reasonable accommodation" for a worker who is exposed to asbestos dust on a daily basis. In this context, a specialized mask or respirator device designed to filter and protect against airborne dust from known toxins and potential carcinogens would be the type of "reasonable accommodation" envisioned by the statute. Indeed, defendant was under an affirmative legal obligation by various workplace safety regulations to provide adequate protective equipment to employees assigned to work in construction sites in which they might be exposed to hazardous materials. It is certainly reasonable to expect that they would furnish such equipment to plaintiff, who was already suffering from progressive lung disease as a result of occupational exposure.

I would accordingly modify to reinstate plaintiff's claims under the New York State Human Rights Law (Executive Law § 296 [1] [a]) and the New York City Human Rights Law (Administrative Code § 8-107 [1] [a]).