Manzanet-Daniels, J., dissents in part in a memorandum as follows: I agree with the majority that the motion court properly dismissed plaintiff’s claim of gross negligence; I disagree, however, with the decision to the extent it affirms dismissal of plaintiffs claims for disability discrimination. Plaintiff alleges that defendant failed to provide him with the required safety equipment, and denied his reasonable request for reassignment to a prior position or for a respirator to limit exposure to the asbestos and environmental dust he encountered at the work site. It is undisputed that plaintiff, a long-time employee of HHC, suffers from disabling, chronic lung disease as a result of occupational exposure to construction dust.
For 26 years, plaintiff worked out of HHC’s central office at 346 Broadway in Manhattan. While there, he worked principally in the office and made site visits, on average, once or twice per week.[3] In August 2005, plaintiffs assignment was changed from the Bellevue Network to the Queens Hospital Network, whose main hospital was undergoing major renovation, including asbestos abatement. Plaintiff had an office at Queens Hospital *434 Center, and visited construction sites on a daily basis.[4] Plaintiff testified that at no time prior to his transfer, nor at any time thereafter, was he provided with respiratory equipment by his employer. He testified that he had been provided with a “dust mask” at Queens Hospital, but explained that a dust mask is insufficient protection since, unlike a respirator, it is not specifically designed to filter particulates. He testified that he had requested a respirator from Anita O’Brien, his supervisor at the time, but that such request was never granted.
In September 2005, plaintiff was diagnosed with pneumoconiosis, an occupational lung disease. On or about October 17, 2005, plaintiffs request for a medical leave of absence under the Family and Medical Leave Act was approved retroactively for the period September 9, 2005 to December 2, 2005. Plaintiff provided HHC with a letter from his pulmonologist, Dr. Skloot, dated December 6, 2005, indicating that his condition had improved with steroid treatment, and that he was ready to return to work, but stating that it was “imperative that he not be further exposed to any type of environmental dust. Specifically, this means that he cannot be present at any construction site.”
On January 3, 2006, when plaintiff returned to work, he was told there were “problems” and that he should go home until called. On or about January 5, 2006, plaintiff’s union representative requested that a reasonable accommodation be made on plaintiffs behalf and that he be assigned work capable of being performed in an office.
On March 21, 2006, Dr. Skloot wrote that plaintiff had demonstrated “significant clinical improvement,” and was ready to return to work immediately. She stated that “he is medically cleared to work in the field,” further noting that she had advised plaintiff that it was “imperative that he not be exposed to any type of environmental dust,” and that plaintiff had assured her that his field work would not include such exposure.
On March 27, 2006, plaintiff returned to work, and while he believed, based on his doctor’s note, that he would be returning to the central office and only occasionally visiting construction sites, he was sent back to Queens Hospital to the same network manager position he had occupied before his medical leave. Plaintiff testified that he complained about the dust to his supervisor at Queens Hospital on several occasions from March to May 2006, and requested a respirator as a reasonable accom *435 modation. Plaintiff testified that in March 2006 he was capable of performing his job out of the central office. When required to visit construction sites, he could do so with proper respiratory protection.
On May 10, 2006, plaintiff requested immediate reassignment to the central office as a reasonable accommodation. Plaintiff stated that he was able to perform any and all functions that had been assigned to him prior to his relocation to Queens Hospital Center. In support of his request, plaintiff submitted a letter from Dr. Stephen M. Levin of Mt. Sinai Hospital, who was treating plaintiff for “severe, impairing scarring lung disease, the result of prior inhalation exposures to asbestos and other mineral dusts in his work environment.” Dr. Levin strongly recommended that plaintiff be “placed in a work setting free from exposure to airborne irritant or fibrogenic dusts, fumes and gases.”
The request was denied. On June 6, 2006, plaintiff was placed on unpaid medical leave and his job was left open in the event that his condition improved. On March 26, 2007, at the end of the leave, plaintiffs employment was terminated.
It is undisputed that plaintiff suffers from severe, degenerative lung disease. He has suffered numerous pulmonary complications as a result of his condition, including a pneumothorax, or collapsed lung, and will eventually need a lung transplant.
On or about March 10, 2008, plaintiff commenced suit against HHC by service of a summons and verified complaint. Plaintiffs complaint alleged disability discrimination in violation of the State Human Rights Law (Executive Law § 296) and the New York City Human Rights Law (Administrative Code of City of NY § 8-107), and gross negligence.
Defendant moved for summary judgment. The court granted the motion, finding that “[plaintiff’s own medical evidence, from his doctor’s letter, leads to the inevitable conclusion that the plaintiff cannot, for medical reasons, spend any time at a construction site, and therefor [sic], can never return to his old duties. By the plaintiff’s own evidence, he has not been discriminated against.” I disagree. Plaintiffs submissions raise triable issues of fact. Plaintiff testified that he was capable of performing his job during the spring of 2006. His doctor’s letter granting medical clearance stated that plaintiff was capable of performing his job so long as his exposure to construction dust was limited. Defendant asserts that plaintiff was unable to visit construction sites, but plaintiff testified that he could visit sites so long as he was provided with proper respiratory protection. *436 Thus, a triable issue of fact exists as to whether plaintiff was capable of performing the essential functions of his job.
A triable issue of fact also exists as to whether defendant made a reasonable accommodation for plaintiff’s disability. Under the State Human Rights Law, an employer is obligated to “provide reasonable accommodations to the known disabilities of an employee ... in connection with a job or occupation sought or held” (Executive Law § 296 [3] [a]; Pimentel v Citibank, N.A., 29 AD3d 141, 145 [2006], lv denied 7 NY3d 707 [2006]). “Reasonable accommodation” is defined as actions taken by an employer which “permit an employee . . . with a disability to perform in a reasonable manner the activities involved in the job or occupation sought or held . . . provided, however, that such actions do not impose an undue hardship on the business” (Executive Law § 292 [21-e]). Similarly, the City’s Human Rights Law requires that an employer “shall make reasonable accommodation to enable a person with a disability to satisfy the essential requisites of a job” (Administrative Code § 8-107 [15] [a]).
There is no dispute that plaintiff suffered from a “disability” within the meaning of the relevant statutes. Plaintiff had asthma and pulmonary problems as of the date of his reassignment from the main office to the Queens Hospital construction site. In September 2005, several months after his reassignment, he was diagnosed with pneumoconiosis, an occupational lung disease, and was found, upon biopsy, to have asbestos, silicates and other construction materials in his lungs.
Under the Executive Law, “reasonable accommodation” includes, but is not limited to, “provision of an accessible worksite, acquisition or modification of equipment, support services for persons with impaired hearing or vision, job restructuring and modified work schedules” (Executive Law § 292 [21-e]). The Division of Human Rights also recognizes that “reasonable accommodation” may include “reassignment to an available position” (9 NYCRR 466.11 [a] [1], [2]).
Plaintiff testified that he complained to his supervisor about airborne dust several times during the March 2006 through May 2006 time frame, and that he specifically requested respiratory protection. He requested reassignment when his supervisor failed to grant his request. As plaintiff notes, defendant could have accommodated his disability by (1) reassigning him to the central office, where, for more than 20 years, he performed field visits on a once a week basis; or (2) assigning him to the Queens Hospital construction site with the requisite respiratory equipment to prevent further exacerbation of his *437 condition. Defendant did neither. Indeed, there is no evidence that defendant engaged in a good faith interactive process to assess the needs of plaintiff and the reasonableness of the accommodation requested, the first step in providing a reasonable accommodation (see Phillips v City of New York, 66 AD3d 170, 176 [2009]). We have stated that the failure to consider the requested accommodation by engaging in an individualized, interactive process is a violation of the state and city statutes (id.).
As the majority notes, the record showed that defendant employer provided plaintiff with an ordinary cloth dust mask. However, the provision of a dust mask, of the type to be found in any hardware store, is not a “reasonable accommodation” for a worker who is exposed to asbestos dust on a daily basis. In this context, a specialized mask or respirator device designed to filter and protect against airborne dust from known toxins and potential carcinogens would be the type of “reasonable accommodation” envisioned by the statute. Indeed, defendant was under an affirmative legal obligation by various workplace safety regulations to provide adequate protective equipment to employees assigned to work in construction sites in which they might be exposed to hazardous materials. It is certainly reasonable to expect that they would furnish such equipment to plaintiff, who was already suffering from progressive lung disease as a result of occupational exposure.
I would accordingly modify to reinstate plaintiff’s claims under the New York State Human Rights Law (Executive Law § 296 [1] [a]) and the New York City Human Rights Law (Administrative Code § 8-107 [1] [a]).

. Plaintiff served first as a health facilities manager, and later as a network manager. He testified that his duties remained the same, despite the change in job title.

. Plaintiff testified that construction was also ongoing in his office at Queens Hospital, explaining that HHC was installing a refrigeration air conditioning system for the building.